Michael ORECK, et al., Appellants,

v.

HARVEY HOMES, INC., Respondent,

JBL Plastering, Inc., Respondent.

No. C5–99–752.

Court of Appeals of Minnesota.

Nov. 23, 1999.

Review Denied Jan. 25, 2000.

Richard I. Diamond, Minnetonka, for appellants.

Robyn N. Moschet, William N. Schieken, McCollum, Crowley, Vehanen, Moschet & Miller, Ltd., Bloomington, for respondent Harvey Homes, Inc.

Timothy P. Tobin, Elliot L. Olsen, Gislason & Hunter, LLP, Minnetonka, for respondent JBL Plastering, Inc.

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant homeowners, Michael and Susan Oreck, challenge the district court's grant of summary judgment in favor of respondents Harvey Homes, Inc. and JBL Plastering, Inc. The Orecks contend the district court erred in applying the two-year statute of limitations under Minn. Stat. § 541.051 (1996) to their breach of contract and breach of warranty claims and in dismissing their equitable estoppel claim. Because we conclude the district court properly applied the statute of limitations and the Orecks have failed to establish a claim of equitable estoppel, we affirm.

## FACTS

Appellants Michael and Susan Oreck contracted with respondent Harvey Homes to provide materials and services for a new

home. Under the terms of the June 22, 1994 contract, Harvey Homes agreed to prepare a plan for the home and to furnish the materials and labor necessary to erect the frame, roof, and fascia, and to install the windows. The remaining labor and materials, including the exterior stucco, were provided by subcontractors approved by Harvey Homes with whom the Orecks directly contracted. For the exterior stucco for their home, the Orecks contracted with respondent JBL Plastering, Inc.

Under the terms of the contract between the Orecks and Harvey Homes, Harvey Homes did not agree to act as a general contractor or provide continuing supervision of the construction of the Orecks' home. According to the Orecks, however, when they hired Harvey Homes, Harvey Homes orally promised to take care of whatever problems occurred. The Orecks contend the residence was constructed, the labor subcontracted and supervised, and materials furnished under the direction and control of Harvey Homes or upon the recommendation or approval of Harvey Homes. Further, as part of Harvey Homes' services, its vice president, Patricia Green, communicated multiple complaints from the Orecks to various subcontractors and asked them to correct them. Harvey Homes also sent its representative to the Orecks' home to make numerous repairs.

Harvey Homes delivered materials and began erection of the Orecks' home at the end of 1994. Construction was completed in April 1995 and the Orecks moved into their home that month. The Orecks subsequently experienced several continuing problems, which became the subject of this suit: (1) rain leaking in from the north due to alleged defective construction and improper gluing of the roof; (2) problems due to ice build-up and water leakage through allegedly improperly installed windows and stucco; (3) wet insulation; and (4) drafts caused by open outlets and sockets.

In response to the Orecks' problems, Harvey Homes examined their house and asked JBL Plastering to perform repair work around the windows to solve the window leakage. JBL Plastering performed this work in the summer of 1995. Harvey Homes also sent an employee to the house to caulk the windows that summer, but the problem was not corrected. In the end of 1995 or early 1996, Harvey Homes sent the window manufacturer out to examine the house; the manufacturer concluded there was no problem with the manufacture or installation of the windows.

On October 26, 1995, the Orecks sent a letter to Harvey Homes outlining their continuing problems. In response, Harvey Homes indicated it would forward the Orecks' concerns to the responsible contractors. Harvey Homes also stated it had determined that the leaks in the Orecks' home were due to the stucco applied by JBL Plastering in the summer of 1995, and suggested the Orecks contact JBL Plastering. After receiving a letter from the Orecks' attorney on November 13, 1995, Harvey Homes sent a letter to JBL Plastering outlining the Orecks' concerns.

On November 14, 1997, the Orecks commenced an action against Harvey Homes alleging breach of contract, breach of express warranties, breach of implied warranties, breach of statutory warranties, breach of covenants of good faith and fair dealing, and negligence. It is uncontroverted that the Orecks discovered the problems outlined in their complaint by October 26, 1995, at the latest. This is evident from an October 26, 1995 letter the Orecks sent to Harvey Homes which outlined each of the problems, with the exception of the defective roof construction, and indicated the problems had been in existence since the Orecks moved into their home in April 1995.

Harvey Homes served its answer on December 5, 1997, but failed to plead the statute of limitations as an affirmative defense. In its answer, Harvey Homes contended that JBL Plastering was responsi-

ble for the conditions in the Orecks' home. But, Harvey Homes chose not to add JBL Plastering as a third-party defendant. Several depositions were taken, including the appellants and two principals of Harvey Homes.

On June 19, 1998, the Orecks filed an amended summons and complaint adding JBL Plastering as an additional direct defendant. On July 10, 1998, Harvey Homes served an answer to the amended complaint, including a statute of limitations defense. The Orecks objected to the inclusion of the statute of limitations defense in Harvey Homes' amended answer.

Harvey Homes and JBL Plastering responded with summary judgment motions to dismiss the Orecks' action on the grounds that the claims were barred by the statute of limitations. Following a hearing on the motions, the district court granted summary judgment in favor of Harvey Homes and JBL Plastering. This appeal followed.

## ISSUES

1. Did the district court err in allowing Harvey Homes to assert a statute of limitations defense even though it asserted the defense for the first time in response to the Orecks' amended complaint?

2. Did the district court err in granting summary judgment on the Orecks' breach of contract claims pursuant to Minn.Stat. § 541.051 (1996)?

   a. Did the district court err in determining there was no genuine issue of material fact as to whether the conditions in the Orecks' home were "unsafe" pursuant to section 541.051, subd. 1?

   b. Did the district court err in finding there was no genuine issue of material fact whether Harvey Homes made assurances to the Orecks and was, therefore, equitably estopped from asserting the statute of limitations defense?

3. Did the district court err in granting summary judgment pursuant to Minn. Stat. § 541.051 on the Orecks' breach of warranty claims?

## ANALYSIS

### 1. Standard of review

On appeal from summary judgment, this court determines whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). In making our determination, we "view the evidence in the light most favorable to the nonmoving party." *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994). No deference need be given to the district court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### 2. Equitable estoppel

■ The Orecks contend the district court erred in ruling Harvey Homes was not equitably estopped from asserting the statute of limitations defense. They argue Harvey Homes waived a statute of limitations defense because it did not affirmatively plead it in response to the Orecks' initial complaint. *See* Minn. R. Civ. P. 8.03 (requiring parties to affirmatively plead the statute of limitations defense).

■ We find no merit in the Orecks' argument. A party is not required to obtain leave of court to respond to a supplemental pleading agreed to by both parties. Minn. R. Civ. P. 15.01. In this case, both parties stipulated to the Orecks' amended complaint.

■ Further, even if a statute of limitations defense is not properly pleaded in the answer, the trial court has broad discretionary powers to permit a party to amend its pleading. *O'Reilly v. Allstate Ins. Co.,* 474 N.W.2d 221, 223 (Minn.App. 1991). A statute of limitations defense may be raised by a motion for summary

judgment, to dismiss, or for judgment on the pleadings. *Ericksen v. Winnebago Indus., Inc.,* 342 F.Supp. 1190, 1194 (D.Minn. 1972). Thus, the district court did not err by allowing Harvey Homes to assert the statute of limitations defense in response to the Orecks' amended complaint.

### 3. Minn.Stat. § 541.051, subd. 1

The district court granted summary judgment pursuant to Minn.Stat. § 541.051, subd. 1 (1996), which provides in relevant part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury * * *.

The Orecks, however, contend this was an error because there are genuine issues of material fact as to whether (1) the conditions in their home were "unsafe" and (2) the statute was equitably tolled by Harvey Homes' alleged promises to "take care of the Orecks' problems."

### a. Unsafe conditions

■ The Orecks concede that the conditions in their home were defective, but contend the district court erred in determining the conditions were also "unsafe" pursuant to section 541.051, subd. 1. We disagree. The Minnesota Supreme Court has broadly defined "unsafe" to mean something that is "insecure." *Griebel v. Andersen Corp.,* 489 N.W.2d 521, 523 (Minn.1992). The problems with the Orecks' home fall squarely within this meaning of "unsafe." The windows, roof, and sockets were not providing a barrier against the unwanted elements of wind, rain, and ice and were, therefore, insecure and unsafe. *See id.* (holding installed patio doors which did not prevent entry of cluster flies were unsafe and insecure because they failed to perform their primary purpose of preventing unwanted intruders).

### b. Equitable tolling

■ The Orecks argue Harvey Homes made assurances that it would take care of the problems with the Orecks' home, and these assurances caused the Orecks to delay commencement of their action. Thus, they contend Harvey Homes should be estopped from asserting the statute of limitations as a defense for the period of time during which it provided assurances that the repairs would be made. This argument was not asserted against JBL Plastering.

■ The two-year limitations period begins to run when the plaintiff discovers an injury sufficient to entitle him or her to maintain a cause of action. *Metropolitan Life Ins. Co. v. M.A. Mortenson Co.,* 545 N.W.2d 394, 398 (Minn.App.1996), *review denied* (Minn. May 21, 1996). But, when the defendant makes assurances or representations that the injury will be repaired and the plaintiff reasonably relies on these assurances to their detriment, the defendant may be estopped from asserting a statute of limitations defense. *Mutual Serv. Life Ins. Co. v. Galaxy Builders, Inc.,* 435 N.W.2d 136, 140–41 (Minn.App. 1989), *review denied* (Minn. Apr. 19, 1989).

■ "Estoppel depends on the facts of each case and ordinarily presents a question for the jury." *Brenner v. Nordby,* 306 N.W.2d 126, 127 (Minn.1981). But, "when only one inference can be drawn from the facts, the question is one of law." *L & H Transp., Inc. v. Drew Agency, Inc.,* 403 N.W.2d 223, 227 (Minn.1987).

The primary issue in this case is whether Harvey Homes made assurances to the Orecks that they would repair the leakage in the windows, roof, and sockets. The

Orecks testified in their depositions that they decided to hire Harvey Homes because of their reputation as a "quality company" that "stand[s] behind their work." Susan Oreck also testified she believed Harvey Homes was their "contractor" and the company assured the Orecks

> they would always be there, * * * they would get all the people to come and do all the work, [the Orecks] didn't have to worry about a thing. * * * [Harvey Homes] would take care of everything and any time [the Orecks] needed anything [they] should call [Harvey Homes].

Harvey Homes acknowledged they were regularly informed of the Orecks' problems, reviewed the problems, contacted the appropriate subcontractors and requested that they correct the problems. They set up a meeting with the window manufacturer and the heating-ventilation-and-air-conditioning contractor. Harvey Homes also sent its representative to caulk around the Orecks' windows and to perform other minor repairs.

But, Harvey Homes' contract with the Orecks stated they were not the general contractor. Additionally, Harvey Homes consistently denied any responsibility for the air and water leakage and made no promises to repair the problems. This is evident in Harvey Homes' October 30, 1995 letter written in response to the Orecks' complaints. In that letter, Harvey Homes stated the window leaks were related to the stucco and suggested the Orecks contact JBL Plastering.

Moreover, the Orecks' deposition testimony supports Harvey Homes' claim that the company never accepted responsibility for the problems or made assurances that it would correct them. Michael Oreck testified that no one at Harvey Homes ever told him they would take responsibility to fix the window leakage problem. As he testified, "[Harvey Homes] basically ignored the problem."

Similarly, Susan Oreck admitted at her deposition that Harvey Homes never promised they would take care of the specific defects in the Orecks' home and never "admitted or assumed responsibility for any of those defects." Susan Oreck stated the only point at which she believed Harvey Homes would take care of any problems with the construction of their home was when the Orecks initially hired Harvey Homes.

■ The only evidence that Harvey Homes made continuing assurances that they would handle the Orecks' air and water leakage problems is Susan Oreck's affidavit, submitted in support of the Orecks' opposition to the summary judgment motions. Upon our review of the record, we affirm the district court's finding that Susan Oreck's affidavit was self-serving and was not sufficient to create a genuine issue of material fact precluding summary judgment. *See Banbury v. Omnitrition Int'l, Inc.,* 533 N.W.2d 876, 881 (Minn.App.1995) (holding "[a] self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact").

Accordingly, we conclude there is no genuine issue of material fact as to whether Harvey Homes made assurances to the Orecks that it would take responsibility for resolving their air and water leakage problems. Although the company acted as an intermediary for the Orecks and their subcontractors, there is no evidence Harvey Homes explicitly promised the Orecks it would repair their problems, and there is no evidence that Harvey Homes induced the Orecks to delay the filing of their complaint.

**4. Breach of warranty**

■ The Orecks argue that pursuant to Minn.Stat. § 541.051, subd. 4 (1996), the ten-year warranty for "major structural defects" under Minn.Stat. § 327A.02, subd. 1(c) (1996), should apply to their breach of warranty claims. They also contend the date they discovered the "breach of war-

ranty" is later than the date they discovered the "injury."

> Minn.Stat. § 541.051, subd. 4, provides: This section shall not apply to actions based on breach of the statutory warranties set forth in section 327A.02, or to actions based on breach of an express written warranty, provided such actions shall be brought within two years of the discovery of the breach.

Section 327A.02, subds. 1 and 1(c) state in relevant part:

> In every sale of a completed dwelling, and in every contract for the sale of a dwelling to be completed, the vendor shall warrant to the vendee that:
>
> \* \* \* \*
>
> (c) during the ten-year period from and after the warranty date, the dwelling shall be free from major construction defects.

Contrary to the Orecks' arguments, Minn.Stat. § 541.051, subd. 4, does not provide them relief from the two-year statute of limitations. First, the defects in the Orecks' home do not likely qualify as "major construction defects." A major construction defect is defined as:

> actual damage to the load-bearing portion of the dwelling \* \* \* including damage due to subsidence, expansion or lateral movement of the soil, which affect the load-bearing function and which vitally affects or is imminently likely to vitally affect use of the dwelling or the home improvement for residential purposes.

Minn.Stat. § 327A.01, subd. 5 (1996). The Orecks have not alleged damage to the load-bearing portion of their home or presented any evidence of this type of damage.

Moreover, even if Minn.Stat. § 327A.01, subd. 5, did apply to the Orecks' case, their warranty claims would still be subject to the two-year statute of limitations established in Minn.Stat. § 541.051, subd. 4. The plain language of that statute requires plaintiffs alleging a breach of the warranties set forth in Minn.Stat. § 327A.02 (1996) to bring their actions within two years of the date they *discovered* the breach of warranty. Section 327A.02 does not provide a separate limitations period; rather, it must be read in conjunction with Minn.Stat. § 541.051, subd. 4.

◼ Our reading of these statutes is bolstered by this court's decision in *Metropolitan*. *Metropolitan* clearly indicates that even if there is a warranty period greater than the statute of limitations, the statute of limitations begins to run from the date the breach of warranty is discovered, regardless of whether it is before the expiration of the warranty. *Metropolitan*, 545 N.W.2d at 400.

In *Metropolitan*, the owner of an office building brought an action to recover damages for defects in spandrel windows which were designed to be opaque but lost their opacity. *Id.* at 397. The windows had a ten-year warranty. *Id.* at 399. Although the owner brought the action within the ten-year warranty period, the court held the action was barred by Minn.Stat. § 541.051, subd. 1, because it was not brought within two years of discovery of the breach of warranty. *Id.* at 401. The court noted the statutory limit is dispositive, not the term of the warranty. *Id.* at 400. The warranty only alters the time when the cause of action accrues; "it does not replace or alter the statutory time limit for bringing the action." *Id.* at 400–01.

In the present case, the events causing the injury and those constituting the breach of warranty are the same: the leakage of water, and air through the windows, roof, and sockets. Accordingly, we conclude the statute of limitations began to run, at the latest, on October 26, 1995, the date the Orecks memorialized the defects in their letter to Harvey Homes. Because this was more than two years before the Orecks filed their first complaint on November 17, 1997, the Orecks' breach of warranty claims are time-barred.

## DECISION

The district court correctly determined that Harvey Homes was not equitably estopped from asserting the statute of limitations as a defense to the Orecks' claims and that the two-year statute of limitations prevented the Orecks from asserting their breach of contract and breach of warranty claims against Harvey Homes and JBL Plastering.

**Affirmed.**