Timothy E. KOES, et al., Respondents,

v.

**ADVANCED DESIGN, INC., Appellant.**

No. C8–01–715.

Court of Appeals of Minnesota.

Dec. 4, 2001.

John M. Mulligan, Patricia A. Docherty, Mulligan & Bjornnes PLLP, Minneapolis, for respondents.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Robert J. Foster, Leslie M. Witterschein, Foster, Wentzell, Hedback & Brever, LLC, St. Anthony, for appellant.

Considered and decided by ANDERSON, Presiding Judge, PETERSON, Judge and FORSBERG, Judge.*

## OPINION

G. BARRY ANDERSON, Judge.

This matter was originally heard in conciliation court, resulting in judgment in favor of respondent-homeowners. At the trial following removal to the district court, the district court initially directed a verdict in favor of appellant-homebuilder. Immediately thereafter, the district court vacated the directed verdict, received further testimony, finished the trial, and dismissed respondents' claim. On August 4, 2000, respondents moved for a new trial, or, in the alternative, for relief from the judgment under Minn. R. Civ. P. 60.02(a) and (f). An amended judgment was entered in favor of respondents. Because we agree with the district court that a cause of action for breach of statutory new-home warranties does not have to be brought within the warranty period, but must be brought within two years of discovery of the defect, we affirm.

## FACTS

This dispute centers around alleged drainage problems in a newly constructed home owned by Timothy and Kristine Koes (respondents) and built by Advanced Design, Inc., a company owned by Janis Khan (appellant).

The district court found that respondents moved into their home in approxi-

Minn. Const. art. VI, § 10.

mately mid-June 1997. Mr. Koes testified that he first recognized problems with the drain tile and transite-heating system in early July 1999. Although the parties disagree whether respondents gave appellant oral notice of the problems, it is undisputed that the first time Mr. Koes notified appellant of the problems in writing was on September 10, 1999.

The record suggests that the drain tile and heating system were improperly installed.[1] Drain tile is installed to keep water out of the basement of a home and is usually placed outside the footing of the home. Among the many problems created by the design of the system at issue here was installation of the drain tile higher than the heat ducts; therefore, the trench that contained the ducts and the drain tile had to fill with water above the height of the heat ducts before the drain tile would begin working. An expert for respondents testified that it was "one of the most poorly installed drain tile systems [he had] ever seen." Appellant admitted that there had been water in the ducts at some point.

During the course of the trial before the district court, the attorney for appellant moved for a directed verdict on the basis that the notice from respondents to appellant did not satisfy the requirements of Minn.Stat. § 327A.02, subd. 1(b) (1998). The district court granted appellant's motion for a directed verdict.

After appellant and counsel left the courtroom, the district court spoke ex parte with respondents and their witness regarding the drain tile. Respondents' witness told the court that the drain tile was not a part of the plumbing system.

Because the district court believed that this issue was crucial to the directed verdict, and that the directed verdict had, therefore, been improperly granted, it vacated the directed verdict and located and called appellant and counsel back to the courtroom.

After the trial recommenced, appellant made another, unrelated motion for a directed verdict based on an alleged grade change around the home. That motion was denied.

Before the proceedings were closed, the district court asked if the parties would allow the court to make a phone call to the City of Vadnais Heights to inquire regarding drain tile. Neither party objected. The district court eventually found for appellant in its first judgment.

Respondents, through correspondence from counsel, alleged that the district court had misapplied *Oreck v. Harvey Homes,* 602 N.W.2d 424 (Minn.App.1999), *review denied* (Minn. Jan. 25, 2000), and then, by formal motion, sought either a new trial or, in the alternative, relief under Minn. R. Civ. P. 60.02(a) or (f).

The district court treated respondents' motion as a motion for amendment of the findings of fact and conclusions of law. The district court issued amended findings and entered an amended judgment for respondents. This appeal followed.

## ISSUES

I.   Did the district court err in applying Minn.Stat. § 327A.02, upholding respondents' action for damages incurred as a result of

---

1. Appellant's attorney admitted during oral arguments that there was at least some "defect" associated with the drain-tile system. But appellant also makes the puzzling argument that the defect was water entering the system. The district court found that the mis-placement of the drain tile was the problem, and the record supports the conclusion that the defect was the manner in which the system was installed and not the end result of water appearing in the heating system.

construction defects in a home drain tile system even though the action was brought after the warranty period had expired?

II. Did the district court abuse its discretion by denying appellant's motion for a directed verdict based on Minn. Stat § 327A.03(h) (1998)?

III. Did the district court abuse its discretion when it:

A. amended its findings in light of new authority offered by respondents after a motion was brought by respondents which requested either relief under Minn. R. Civ. P. 60.02 or, in the alternative, a new trial?

B. accepted a letter regarding respondents' argument in support of their motion and did not require a formal memorandum of law?

## ANALYSIS

Minnesota first addressed consumer complaints surrounding new-home construction, in any comprehensive way, when it adopted a new body of consumer-protection law largely focused on home warranties. These legislative actions are codified in chapter 327A, and it is one of these provisions, found at Minn.Stat. § 327A.02, subd. 1, that prompts the controversy before this court. The relevant portion of that statute provides:

Warranties by vendors. In every sale of a completed dwelling, and in every contract for the sale of a dwelling to be completed, the vendor shall warrant to the vendee that:

* * * *

(b) during the two-year period from and after the *warranty date,* the dwelling shall be free from defects caused by

faulty installation of plumbing, electrical, heating, and cooling systems; * * *.

Minn.Stat. § 327A.02, subd. 1 (1998) (emphasis added).

The "warranty date" is defined as

the date from and after which the statutory warranties provided in section 327A.02 shall be effective, and is the earliest of

(a) The date of the initial vendee's first occupancy of the dwelling; or

(b) The date on which the initial vendee takes legal or equitable title in the dwelling.

Minn.Stat. § 327A.01, subd. 8 (1998).

Additionally, Minn.Stat. § 327A.03(a) (1998), provides that a builder is not liable for any

[l]oss or damage not reported by *the* vendee or the owner to the vendor or the home improvement contractor in writing within six months after the vendee or the owner discovers or should have discovered the loss or damage[.]

But the legislature, at the same time that it created a new statutory home-warranty framework, also provided an exemption from the generally applicable statute of limitations governing services for construction to improve real property found in Minn.Stat. § 541.051, subd. 1(a). That exception provides:

This section *shall not apply* to actions based on breach of the statutory warranties set forth in section 327A.02, or to actions based on breach of an express written warranty, provided such actions shall be brought within two years of the discovery of the breach.

Minn.Stat. § 541.051, subd. 4 (emphasis added) (1998). *This subdivision was added* in 1977, at the same time the new statutory home warranties were enacted. *See* 1977 Minn. Laws, ch. 65, § 8.

Thus, a homeowner struggling with defects caused by faulty installation of certain new-home systems must bring an action under the § 327A.02, subd. 1(b) warranty provision within two years after discovery of a defect and must report any loss or damage to the homebuilder within six months of either discovery of the loss or when the loss or damage should have been discovered. The difficult issue then becomes how to resolve the conflict between respondents' reporting of the defect *after* the two-year warranty period expires, but within both the two-year (§ 541.051, subd. 4) and six-month requirements (§ 327A.03(a)).

But statutes of limitation are not the only barriers to litigation claims. The legislature has also created what are commonly known as statutes of repose to prevent stale claims. Prosser and Keeton have stated:

> A statute of repose generally begins to run at an earlier date and runs for a longer period of time than the otherwise applicable statute of limitations unaffected by the discovery accrual rule. Repose statutes may begin to run from the time of the defendant's act * * *, or upon the occurrence of a specific and identifiable event shortly thereafter—as from the substantial completion of the structure, in actions against * * * contractors * * *. Statutes of repose by their nature reimpose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists * * *.

William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 30, at 168 (W. Page Keeton et. al. eds., 5th ed.1984) (footnotes omitted). Other authorities have also noted the difference between statutes of limitation and repose. *Black's Law Dictionary* has stated that

[w]hile statutes of limitation are sometimes called "statutes of repose," the former bars right of action unless it is filed within a specified period of time after injury occurs, while "statute of repose" terminates any right of action after a specific time has elapsed, regardless of whether there has as yet been an injury.

*Black's Law Dictionary* 927 (6th ed.1990); *see also Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 830 (Minn.1988) (distinguishing statutes of limitation from statutes of repose). Further, a statute of repose differs from a statute of limitations in that it "cuts off right of action after a specified time measured from * * * completion of work, regardless of time of accrual of cause of action." *Black's Law Dictionary, supra*, at 1411. Other authorities have stated that a statute of repose

> differs from a period of *limitation* * * * because it bars a suit a fixed number of years after the defendant acts in some way * * *, whereas *limitation* bars an action if the plaintiff does not file suit within a set period of time from the date when the cause of action accrues.

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 759 (2d ed.1995).

The general Minnesota statute of limitations for claims based on services or construction to improve real property, found in Minn.Stat. § 541.051 subd. 1(a), contains both a two-year statute of limitations and a ten-year statute of repose which provides that "a cause of action [shall not] accrue more than ten years after substantial completion of the construction." *Id.* Like all statutes of repose, this provision bars any litigation, regardless of discovery or nondiscovery of the defect. But, as noted earlier, because warranty claims under Minn.Stat. § 327A.02 are specifically exempted from the statutes of limitation and repose set forth in Minn.Stat. § 541.051,

subd. 1(a), the only statutory limitation applying, by its terms, to a § 327A.02 claim is found in § 541.051, subd. 4. The limitation found in Minn.Stat. § 541.051, subd. 4, requires home-warranty actions based on Minn.Stat. § 327A.02 to be "brought within two years of the discovery of the breach" of warranty.

## I.

■ This case involves the interpretation of Minn.Stat. § 327A.02, subd. 1, and Minn.Stat. § 541.051, subd. 4. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

Appellant argues that a breach of warranty action is time-barred if not brought within the applicable two-year warranty period, regardless of when the defect was discovered. Respondents argue that the statutory scheme reflects the legislative intent to provide statutory warranties on new homes and to allow homeowners to bring claims, so long as those claims are brought within two years of discovery of the defect.

Appellant argues that under *Oreck*, respondents' cause of action is barred because it was not brought within the warranty period. *See Oreck*, 602 N.W.2d at 424. But *Oreck*, the only Minnesota appellate decision to deal with statutory home-warranty provisions and statutes of limitation and repose, is of only marginal assistance here because it is distinguishable from the present controversy.

The Orecks contracted with Harvey Homes for the construction of a new home. *Id.* at 425–26. The Orecks experienced problems with their new home, including water leakage and improperly installed windows, *id.* at 426, and eventually sued Harvey Homes, claiming that Minn.Stat. § 327A.02, subd. 1(c), provided a means to

recover against the contractor because the defects were "major construction defects." *Id.* at 429–30. Under Minn.Stat. § 327A.02, subd. 1(c), major construction defects have a ten-year warranty period, as opposed to the two-year warranty period in Minn.Stat. § 327A.02, subd. 1(b).

This court held, in *Oreck*, that the statutes must be read in conjunction. *See id.* at 430. The court stated that even if the defects claimed were major construction defects, and thus subject to the ten-year limitation period, the statute of limitations contained in Minn.Stat. § 541.051, subd. 4, still applied. *Id.* Further, the *Oreck* court cited *Metro. Life Ins. Co. v. M.A. Mortenson Co.*, 545 N.W.2d 394 (Minn.App.1996), which held that when an injury is discovered, the statute of limitations, not the warranty period, is dispositive in determining when the claim must be brought. *Id.* at 400–01. Therefore, because the Orecks failed to bring their claim within two years after the discovery of the defect, their claim was barred. *Oreck*, 602 N.W.2d at 431.

*Oreck* is similar to this case because it involves the interplay between § 541.051 and § 327A.02, and examines the warranty period's relationship with the statute of limitations, but the similarities end there. The *Oreck* court was specifically dealing with a homeowner bringing an action within the alleged ten-year warranty period but outside the two-year "discovery" period. *Oreck*, 602 N.W.2d at 430.

In our present dispute, the two-year warranty period ended before respondents found the defect or reported the defect to the homebuilder. According to the district court, the warranty period began to run in mid-June 1997, the day the court found respondents moved into their home. *See* Minn.Stat. § 327A.01, subd. 8(a). Mr. Koes testified that the first time he discov-

ered the defect in the drain tile system was in early July 1999. It is undisputed that respondents first gave written notice to appellant on September 10, 1999, well within two years after discovery of the construction problems.

■ The goal in reading a statute is to effectuate the purpose of the legislature. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986); *see also* Minn.Stat. § 645.16 (1998). The legislative goal, as expressed in the relevant statutes at issue here, was the protection of the buyers of new homes.

■ Generally, Minn.Stat. § 541.051, subds. 1–3, provide that a cause of action may be brought up to 12 years after "substantial completion of the construction." But, respondents argue that the statutory-home-warranties exemption set forth in § 541.051, subd. 4, was specifically enacted so that those claims would not be limited by the § 541.051, subd. 1, statute of limitations, but instead would be governed by the six-year statute of limitations provided in Minn.Stat. § 541.05, subd. 1(1) (1998), which governs certain contracts and other obligations.[2]

According to the plain language of the statute, the statute of limitations set forth in Minn.Stat. § 541.051 does not apply to § 327A.02. Section 541.051, subd. 4, does not expressly state that the breach must be discovered within the warranty period. *See Ly v. Nystrom,* 615 N.W.2d 302, 315 (Minn.2000) (Page, J., concurring in part, dissenting in part) (a court should not read into a statute what the legislature has left out). The statute only provides that the action "shall be brought within two years of the discovery of the breach." Minn. Stat. § 541.051, subd. 4. Further, there is no other reference to any statute of repose that limits the time in which a cause of action must be brought for breach of warranty under § 327A.02.

■ Respondents notified the appellant-homebuilder within the six-month period required by Minn.Stat. § 327A.03(a) and brought their cause of action within two years after the discovery of the defect. Therefore, they satisfied the two-year requirement set forth in Minn.Stat. § 541.051, subd. 4. The legislature limited respondents' rights to recovery by exempting the builder from liability if the homeowner discovered or "should have discovered the loss or damage" more than six months before the claim was filed. Minn. Stat. § 327A.03(a). But here, respondents did not discover the breach until after the two-year warranty period and, indeed, there was no evidence presented that they should have discovered the defect any earlier. In fact, appellant admits the earliest respondents could have discovered the de-

---

**2.** There is some support in other jurisdictions for this proposition. The Supreme Court of Virginia has held that Virginia's two-year warranty on all "common elements" of a condominium can be brought outside the two-year warranty period, but must be brought within the statute of limitations for breach-of-warranty suits. *See Harbour Gate Owner's Ass'n v. Berg,* 232 Va. 98, 348 S.E.2d 252 (1986). Furthermore, Minn.Stat. § 541.05 provides a general six-year limitation statute for several actions such as conversion, trespass, and certain contract actions. But in § 541.051, subd. 4, the legislature specifically provided a two-year discovery rule for § 327A.02 claims. In matters of statutory construction, a particular provision controls a general provision. *See* Minn.Stat. § 645.26, subd. 1 (2000); *Fagerlie v. City of Willmar,* 435 N.W.2d 641, 644 (Minn.App.1989) (holding § 541.051, subd. 1, applied to nuisance claim because it was more particular than the "catch-all" provision found in § 541.05, subd. 1(2)). But in the present case the application of either the six-year statute of limitations found in § 541.05, subd. 1(1), or the two-year limitation found in § 541.051, subd. 4, does not bar respondents' claim. Therefore, we leave for another day the issue of which statute of limitations applies.

fect was July 26, 1999. Under these circumstances, respondents' claim is not barred by the statute of limitations provided in Minn.Stat. § 541.051, subd. 4.

Our analysis is not without its problems. As appellants correctly point out, there is no clear statute of repose that even arguably applies to the new-home statutory warranty at issue here, and thus, there is at least a hypothetical potential for stale claims extending many years into the future because the homeowner was not in a position to discover the defect or damage.

■ Perhaps the legislature intended to cut off such claims and the absence of a statute of repose (or a clear, non-discovery-based statute of limitations) applicable to the specific new-home warranty at issue here was an oversight. But whether the decision was intended or inadvertent, the public policy issues associated with statutes of limitation and repose are for the legislature to determine.[3] If a statute needs to be changed, the change must come from the legislature, regardless of whether the need for the change arose from an inadvertent mistake by the legislature or a purposeful omission. *See Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987).

## II.

We turn next to appellant's claim that respondent changed the grade of the property and, therefore, under the statute, appellant was no longer responsible for any damages.

■ When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the district court

discretion in its ultimate conclusions and we review such conclusions under an abuse-of-discretion standard. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997).

Minn.Stat. § 327A.03 provides, in relevant part:

> The liability of the vendor or the home improvement contractor under sections 327A.01 to 327A.07 is limited to the specific items set forth in sections 327A.01 to 327A.07 and does not extend to the following:
>
> * * * *
>
> (h) Loss or damage from changes in grading of the ground around the dwelling or the home improvement by parties other than the vendor or the home improvement contractor * * *.

■ Respondents and appellant disagree whether the property's grade was changed by a party other than appellant. Not surprisingly, given the modest amount involved in this claim, there is no expert testimony about elevation levels, there are no before-and-after surveys, and there is little corroborative evidence of any kind. Given the limited record and the parties' conflicting testimony, the district court's conclusion essentially found respondents' testimony more credible than appellant's. Because the district court did not abuse its discretion in making these credibility determinations, we will not disturb the district court's findings and conclusions of law on this issue. *See* Minn. R. Civ. P. 52.01.

## III.

Appellant contends that the district court erred in two ways when it reopened the trial after judgment was rendered. First, appellant argues that respondents' motion was not supported by a memoran-

---

**3.** The legislature has provided for other discovery-based statutes of limitation. For example, fraud claims do not accrue until "discovery by the aggrieved party of the facts constituting the fraud." Minn.Stat. § 541.05, subd. 1(6) (2000).

dum of law and, therefore, was improper. Second, appellant argues that it was improper as a matter of law for the court to use Minn. R. Civ. P. 60.02 to amend its conclusions of law based solely on judicial error.

Appellant argues that the respondents' motion for relief under Minn. R. Civ. P. 60.02 was erroneously granted because the motion was based on what respondents alleged was judicial error. Minn. R. Civ. P. 60.02 provides:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representatives from a final judgment (other than a marriage dissolution decree), order, or proceeding and may order a new trial or grant such other relief as may be just for the following reasons:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect;
>
> * * * *
>
> (f) Any other reason justifying relief from the operation of the judgment.

■ There is support for appellant's claim that a rule 60.02 motion should not be used to correct judicial error. *See Carter v. Anderson,* 554 N.W.2d 110, 113–14 (Minn.App.1996), *review denied* (Minn. Dec. 23, 1996). We do not need to address this issue because respondents also requested a new trial under Minn. R. Civ. P. 59.01, and the district court used this rule to amend its original findings and conclusions. There is no doubt that a motion for a new trial, or for amended findings of fact and conclusions of law, can be granted by the district court on the basis that the court made an error of law at trial. *Stoebe v. Merastar Ins. Co.,* 554 N.W.2d 733, 735 (Minn.1996). We therefore conclude that the district court properly corrected its error of law by applying the provisions of Minn. R. Civ. P. 59.01. Consequently, appellant's claims are without merit.

■ Appellant next claims that respondents' motion seeking relief under Minn. R. Civ. P. 59.01 is defective because a memorandum of law did not accompany it. The Minnesota Rules of General Practice are clear that a memorandum of law is not required for non-dispositive motions. The rule deals only with the time period during which such documents, if any, must be filed:

> No motion shall be heard until the moving party serves a copy of the following documents on the other party or parties and files the original with the court administrator at least 14 days prior to the hearing:
>
> (1) Notice of motion and motion;
>
> (2) Proposed order;
>
> (3) Any affidavits and exhibits to be submitted in conjunction with the motion; and
>
> (4) Any memorandum of law the party *intends* to submit.

Minn. R. Prac. 115.04(a) (emphasis added). Because a memorandum of law is not required for non-dispositive motions, appellant's claim is without merit.

■ Appellant also challenges the district court's subject-matter jurisdiction because the parties allegedly agreed to arbitrate any claims arising from the home-sale contract. Subject matter jurisdiction concerns a court's power to hear certain issues and answer particular questions. *Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 432 (Minn.App. 1995), *review denied* (Minn. May 31, 1995). "[L]ack of subject matter jurisdiction may be raised at any time, including for the first time on appeal." *Id.* (citations omitted). Appellate courts review determinations of subject matter jurisdiction de novo. *Bisbee v. City of Fairmont,* 593 N.W.2d 714, 717 (Minn.App.1999).

A contractual agreement to arbitrate disputes does not strip the district court of its subject matter jurisdiction to resolve the dispute. *Park Constr. Co. v. Indep. Sch. Dist. No. 32*, 209 Minn. 182, 186, 296 N.W. 475, 477 (1941). But an arbitration agreement will only be enforced if enforcement is sought in a timely manner. *See* Minn.Stat. § 572.08 (1998); *see also Niazi v. St. Paul Mercury Ins. Co.*, 265 Minn. 222, 230–31, 121 N.W.2d 349, 355 (1963). An arbitration agreement may create a right to arbitration, but that right can be waived. *Bast v. Capitol Indem. Corp.*, 562 N.W.2d 24, 29 (Minn.App. 1997).

The supreme court has held

that a party to a contract containing an arbitration provision will be deemed to have waived any right to arbitration if judicial proceedings based on that contract have been initiated and have not been expeditiously challenged on the grounds that disputes under the contract are to be arbitrated.

*Brothers Jurewicz v. Atari, Inc.*, 296 N.W.2d 422, 428 (Minn.1980) (citations omitted). Therefore, the presence of an arbitration agreement does not divest the district court of its power to hear the case, and the provision may be waived through the actions of the parties.

Although appellant raised the arbitration issue in the district court proceedings in its trial memorandum, the arbitration disclosure and residential-real-property-arbitration agreement were not exhibits at trial. The district court specifically explained that respondents could have been forced to arbitrate if the arbitration agreement was presented, but appellant never produced the document. Because appellant failed to produce the agreement at any level of these proceedings, we find that appellant has waived the arbitration provision. *See id.* Further-

more, ordering the parties to arbitrate at this point in the litigation would prejudice respondents, who relied on appellant's failure to produce the arbitration agreement at every stage of this litigation. *See Preferred Fin. Corp. v. Quality Homes, Inc.*, 439 N.W.2d 741, 744 (Minn.App.1989).

Finally, we turn to appellant's claim that the district court erred (1) by speaking to the opposing party outside the presence of appellant and counsel and (2) by contacting an official of the City of Vadnais Heights regarding the drain tile. Appellant's first argument is based on Minnesota Code of Judicial Conduct, which prohibits ex parte communication between a judge and a party:

(7) A judge shall accord to every person who has a legal interest in a proceeding, or person's lawyer, the right to be heard according to law. A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except that:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if

the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

Minn.Code of Judicial Conduct, Canon 3A(7)(a)-(b) (1996).

While it is true that there was some ex parte communication between the district court and respondents, the record does not indicate that any substantive discussions occurred, other than a conversation regarding whether the drain tile was part of the plumbing system. It also appears that appellant and counsel were in the courtroom by the time the district court vacated its order, because, immediately thereafter, appellant's counsel made an argument concerning the order.

■ Even assuming that (1) there was an ex parte communication and that (2) this communication constituted error, appellant bears the burden of demonstrating prejudicial error. *See Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn.App.1993), *review denied* (Minn. June 28, 1993). While the ex parte communication here is certainly troubling and should not have occurred, appellant has not shown any prejudice from the very limited ex parte communication that took place. Furthermore, the district court found for appellant in its first order, even after vacating its directed verdict. Therefore, appellant's claim fails.

■ Appellant also challenges the district court's ex parte communication with the City of Vadnais Heights. But the district court specifically asked respondents and counsel for appellant if they would permit the district court to make such an investigation. Because appellant failed to object at the time of trial to this outside investigation by the district court, appellant waived this argument. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988).

■ Respondents also request attorney fees on appeal. "A party seeking attorneys' fees on appeal shall submit such a request by motion under Rule 127." Minn. R. Civ.App. P. 139.06, subd. 1. Because respondents failed to file a Rule 127 motion for attorney fees on appeal, they are not currently entitled to attorney fees. *See In re Marriage of Crockarell*, 631 N.W.2d 829, 837 (Minn.App.2001), *review denied* (Minn. Oct. 16, 2001).

## DECISION

Respondent-homeowners may bring an action under Minn.Stat. § 327A.02, subd. 1(b), after their two-year warranty period expires, if the action is brought within the two-year limitations period in Minn.Stat. § 541.051, subd. 4, and meets the six-month reporting requirement of § 327A.03(a). The district court was also within its discretion in making a credibility determination and finding that the grade of the home had not changed. *See* Minn. Stat. § 327A.03(h). Furthermore, the district court properly found that appellant had waived the provisions of the arbitration agreement by failing to introduce the agreement into evidence at any level of the proceedings. Finally, we conclude that appellant's arguments concerning procedural irregularities at the district court level are without merit.

**Affirmed.**