THE RIVERS, Respondent,

Arnold Divine, et al., Appellant
(C6–90–165),

Allied Insurance Company,
Appellant (C4–90–195),

v.

RICHARD SCHWARTZ/NEIL WEBER,
INC., Franklin Construction Company,
Inc., Bernhagen Brick, Inc., Respondents,

The Rivers Association,
Respondent (C4–90–195).

Nos. C4–90–195, C6–90–165.

Court of Appeals of Minnesota.

August 21, 1990.

Review Denied Oct. 25, 1990.

Jerome B. Simon, Maun & Simon and Steven Rau, St. Paul, for The Rivers.

Lawrence J. Skoglund, Thomas Emmer, and Robert E. Kuderer, Chadwick, Johnson & Condon, Minneapolis, for Allied Ins. Co.

David B. Sand, Briggs and Morgan, Minneapolis, for Richard Schwartz/Neil Weber, Inc.

James A. Reding, Mark Andrew Pilney, Reding & Votel, St. Paul, and William G. Bale, Hillstrom & Bale, Minneapolis, for Franklin Const. Co., Inc.

Marianne Settano, Peterson & Treat, P.A., Minneapolis, for Bernhagen Brick, Inc.

Thomas J. Rooney, Rooney & Neilson, Ltd., Arden Hills, for The Rivers Ass'n.

Considered and decided by CRIPPEN, P.J., and RANDALL and SCHULTZ *, JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

CRIPPEN, Judge.

The trial court granted judgment in favor of architects, developers, and builders based on a two-year statute of limitations for suits involving defects to real property. The trial court had previously rejected a Miller–Shugart settlement between the parties. On appeal, this litigation was consolidated with the related appeal of Allied Insurance Company from a trial court decision that it could not avoid coverage for construction defects in the property, notwithstanding exclusions within its policy. We affirm the decisions in the defects suit, and reverse the judgment against Allied.

## FACTS

### 1. Statute of limitations.

Appellant The Rivers Association[1] represents owners of a 19–unit condominium constructed in 1979 and 1980. The project was developed by respondent The Rivers, a partnership, and designed by respondent Richard Schwartz/Neil Weber, Inc. Respondent Franklin Construction Company was the construction manager of the project and respondent Bernhagen Brick, Inc. provided the masonry work.

On August 3, 1984, the association, together with the partnership, initiated a suit against Franklin, Schwarz/Weber, and Bernhagen. The suit claimed damages arising from construction defects in the condominium roof, the terrace and garage, and the brick facade. The association contends that evidence would show damages in excess of $1,000,000.

On January 9, 1987, the association, represented by separate counsel, initiated a suit against the respondent partnership for breach of warranty, negligent selection and supervision of architects and builders, and negligent failure to take remedial measures.

In orders of October and November 1989, the trial court ordered judgment for all four respondents on the association's claims and cross-claims. The court concluded that the 1984 suit and the 1987 cross-claim were precluded by Minn.Stat. § 541.051 (1988).[2] Based on testimony and exhibits, the trial court found that all the defects in the project were known to members of the association more than two years before the defects action was commenced.

### 2. Insurance.

While the defects suit was pending, appellant Allied Insurance Company filed a separate, declaratory judgment action alleging that certain exclusions in a policy issued to Franklin for the project precluded coverage. The policy issued is a standard form comprehensive general liability policy. The policy excluded coverage for loss of use of property resulting from the failure of Franklin's work product to meet the level of fitness warranted by Franklin. This exclusion did not apply to loss of use of property other than the work product. A further exclusion applied to property damage to Franklin's work product arising out of the product itself. The insurance policy also contained a so-called standard broad form endorsement which provided coverage for Franklin's completed projects. This endorsement contained an exclusion stating that with respect to completed projects, insurance would not be provided for property damage to projects completed by Franklin arising out of the work done on the projects.

---

1. Throughout this opinion, we refer to the association as "appellant," its status in the defects litigation. In the insurance action, however, the association is a respondent.

2. This statute provides that unless fraud is involved, no action to recover damages for any injury arising out of a defect in an improvement to real property may be brought against any person performing or furnishing the design, planning, supervision, materials, or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury nor, in any event more than ten years after substantial completion of the construction. Prior to amendments effective in 1988, the cause of action accrued upon discovery of the defect, rather than discovery of the injury. The 1988 amendments are applicable to this matter. *See* 1988 Minn.Laws ch. 607, § 1.

In December 1989, applying three theories, the trial court determined that these exclusions did not govern the case. Among those theories, the trial court stated that even though damages were claimed for defects in the construction project, the work product exclusions did not preclude coverage for Franklin's negligence in rendering services as a construction manager supervising labor and materials of other contractors.

### 3. *Miller–Shugart* agreement.

In March 1989, the association, the partnership, Franklin, Bernhagen, and Schwartz/Weber entered into a settlement agreement of the defects claims. Franklin confessed a $1.2 million judgment, subject to a covenant not to sue, under which the association would collect such judgment only from the Allied insurance policy. The agreement purported to release Franklin from all claims even if the trial court rejected the agreement. The agreement also stated that its construction would be governed by the principles set forth in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982). The parties concede that the agreement was made without notice to Allied which had begun its declaratory action. The agreement was also made without notice to counsel furnished to Franklin by Allied to defend the association's defects claims. The trial court rejected the settlement as fraudulently devised.

### ISSUES

1. Was dismissal appropriate?

2. Did coverage exist for Franklin under the insurance policy issued by Allied?

3. Did the trial court properly reject the *Miller–Shugart* agreement?

### ANALYSIS

### 1. Statute of limitations.

The standard governing the two year limitations law is whether the association discovered, or in the exercise of reasonable diligence should have discovered, an injury sufficient to entitle it to maintain a cause of action. *Greenbrier Village Condominium Two Ass'n, Inc. v. Keller Inv., Inc.*, 409 N.W.2d 519, 524 (Minn.App. 1987). This standard places the burden of discovery of the injury on the plaintiff. *Id.* at 525.

The injuries here are sufficient to sustain a cause of action. However, the trial court found that "it is clear that the matters of which the association complains had all been known to the members of the association prior to the period two years before the [claims were] commenced." This finding is sustained by evidence of record and is not clearly erroneous. Testimony to support the finding came from three witnesses, Sol Austrian, Sylvester Brand, and J. Donald Kelly.

Austrian testified that he moved into the building in July 1980. He had been president of the association from 1980 through the end of 1981, was on the association board from September 1983 to September 1985, and was a partner in the partnership. Austrian stated that while he was president of the association and after the construction problems arose, he had received reports from the architect and various testing agencies and that he had brought these reports to the attention of the association. Austrian testified to the existence of water problems in Brand's unit prior to the Brand's purchase of the unit. He also testified that drainage channels were constructed in the basement garage in 1981 to correct leakage problems.

Sylvester Brand testified that he lived in unit 501 and that when he first inspected the unit in June 1982 he noted that the ceiling was being repaired. J. Donald Kelly testified that when he moved into the building on April 18, 1981 he had problems with "severe water accumulation" on the floor of his garage stalls. He stated that later, a channel was cut in the garage floor to carry the water away, and that the channel partially carried the water away. He also affirmed that within a year after he moved in he "certainly was noticing" water problems in the basement garage.

All of these facts show knowledge more than two years before the suit against Franklin and the others in August 1984.

In addition, as reflected in the following discussion of other events after August 1982, some of these events also suggest knowledge before that date.

With reference to the cross-claim, these same individuals obtained additional knowledge of injuries prior to January 1985. For example, Austrian received a copy of a letter dated October 29, 1982, discussing repairs made to the penthouse unit roof in May 1982. He also testified to receiving other reports and letters detailing the defects and repair efforts. He testified to the further construction of drainage channels in 1983 to correct leakage problems in the basement garage. Brand testified that when he moved in, in October 1982, he noticed repair work proceeding in the garage. He said that after he moved in, the ceiling leaked after a rainstorm on October 22, 1982. He also testified that at different times from 1983 through 1985 he had buckets in his unit to protect from the leaks. Kelly said that he transferred garage stalls in September 1982 after he slipped and fell on accumulated water.

We have reviewed the trial court's findings under the clearly erroneous standard of Minn.R.Civ.P. 52.01. The association contends that the summary judgment standard should be used, i.e. that summary judgment is inappropriate where there is a genuine issue yet to be tried. The Association does not correctly characterize the trial court's work. As respondents argue, the trial court tried and decided the question in a full presentation, not on summary judgment. Although it does not appear of record, it is undisputed that the proceedings were to be tried to a jury. After the parties waived a jury trial, the court heard evidence on, and addressed the statute of limitations issue. Though this was a full presentation of the evidence, the association presented no evidence to support its claims. Even on appeal the association has not presented any evidence. Under the summary judgment standard, the evidence as to knowledge obtained by the parties between 1980 and 1985 is not disputed and leaves no genuine issue to be decided.

■ The association also contends that the significance of its knowledge of defects was destroyed by assurances that repairs would be made. They are essentially arguing that Franklin and others are estopped from asserting the statute of limitations defense for those periods of time during which they provided assurances that the repairs would be made. The elements of estoppel include "representations or inducements by the defendant upon which the plaintiff has reasonably relied to his detriment." *Mutual Service Life Ins. Co. v. Galaxy Builders, Inc.,* 435 N.W.2d 136, 140 (Minn.App.1989) (quoting *Brenner v. Nordby,* 306 N.W.2d 126, 127 (Minn.1981)), *pet. for rev. denied* (Minn. Apr. 19, 1989). As to Franklin, Schwartz/Weber, and Bernhagen, there is no evidence of assurances. As to the partnership, there is evidence that a partner gave an association member assurances that repairs would be made, but these assurances occurred in 1982. Given the substantial passage of time until the cross-claim was brought in 1987, and given evidence of continuing defects after 1982, these assurances do not support an estoppel theory.

■ As to the cross-claim against the partnership, the association argues that the partnership may have prevented the association from asserting its cross-claim earlier and thus the partnership should be estopped from asserting the statute of limitations defense for the period in which both were represented by the same counsel. While we note that some of the partners are also association members, no evidence was offered to show that any partner prevented the association from asserting its cross-claim.

2. Insurance coverage.

■ Allied challenges the trial court's conclusion that Franklin, acting as a construction manager rather than as a general contractor, performed only services and thus did not have a "product" for which the policy provided an exclusion from coverage. In *Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of America,* 323 N.W.2d 58, 63 (Minn.1982) and *Knut-*

son Const. Co. v. St. Paul Fire and Marine Ins. Co., 396 N.W.2d 229, 236 (Minn. 1986) the test for whether the insured party had a product was based on the degree of control that the insured had over the project. Here, Franklin's president, James Culliton, testified that Franklin and its field supervisor were responsible for the entire project, coordinated all of the scheduling of the work, dealt with all of the contractors and subcontractors, obtained certificates of readiness for the utilities, prepared the contracts for the contractors, obtained building permits, ensured that the other contractors had insurance, arranged soil testing, inspected and approved the work, and approved payments for work as it was completed. Culliton agreed that Franklin had effective control of the project. Given this testimony, Franklin cannot successfully argue that the project is not its work product; the company clearly had ultimate responsibility and effective control of the project.

Concluding that Franklin has a product within the meaning of the general liability policy, we are compelled to follow the direction of Bor–Son and Knutson. In Bor–Son, the supreme court discussed the "business risks" that a contractor assumes by entering into a building contract. 323 N.W.2d at 61. Those risks include the obligation to construct buildings free from defects. Id. Any damage to the buildings themselves due to defects flows from the contractual obligations undertaken by a contractor. Id. To protect an owner from loss resulting from such building damage, the court stated, a contractor is required to furnish a performance bond. Id. To protect those who sustain personal injury or damage to property other than the building in question (for example, a passerby injured when a wall of the building collapses), a contractor is required to carry comprehensive general liability insurance. Id. at 61–62. Here, to allow the association to recover damages from Allied's policy would, in effect, convert Allied's general liability policy into a performance bond and allow Franklin to shift its responsibility to provide a project free from defects to its insurer. This result is expressly impermissible under Bor–Son and Knutson.

Franklin, et al., attempt to distinguish their case from Bor–Son and Knutson and cite Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc., 260 N.W.2d 450 (Minn. 1977) and Western World Ins. Co. v. H.D. Engineering Design and Erection Co., 419 N.W.2d 630 (Minn.App.1988). In Western World the court of appeals found coverage under a general liability policy because the underlying lawsuit by the owner against the contractor was for damages caused by an accident rather than for damages due to defective workmanship. Id. at 635.

The Bor–Son court distinguished Ohio Casualty based on three considerations, including the fact that the contractor in Ohio Casualty did not have responsibility for the whole project. Bor–Son, 323 N.W.2d at 63. The major difference between Ohio Casualty and this case is that there was no supervision of the whole project by the contractor in Ohio Casualty.

The trial court identified three additional theories for avoiding the exclusions. First, the trial court found an ambiguity in the fact that the main portion of the policy excluded completed operations coverage while the schedule of premiums showed that a premium had been paid for completed operations. It is evident from a reading of the policy that there is coverage for completed operations under section VI of the policy but that exclusions within these provisions, although not wholly eliminating the coverage, are consistent with the work product exclusions discussed earlier in this opinion.

Second, the trial court found that Allied had provided coverage to Franklin for liabilities that it assumed in its contract with the owners. In that contract, Franklin gave a warranty for defects in workmanship. The trial court found coverage under an exception to an exclusion which provided:

This insurance does not apply: (a) to liability assumed by the insured under contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality

of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

However, coverage under the policy is limited if the claimed damage flows from property damage. The exclusions noted earlier clearly limit the property damage coverage by excluding damage to Franklin's products. *Atlantic Mut. Ins. Co. v. Judd Co.*, 367 N.W.2d 604, 608 (Minn.App. 1985), *aff'd* 380 N.W.2d 122 (1986) Furthermore, affording coverage to Franklin on this construction of the policy would violate the principle set forth in *Bor–Son* and *Knutson* against insuring contractors against their own faulty workmanship.

■ Third, the trial court applied the reasonable expectations doctrine to provide coverage for Franklin. The doctrine applies to defeat the language of the policy and honor a construction based on what a reasonable person would believe the terms of the policy meant. *Atwater Creamery Co. v. Western Nat'l. Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985). In *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 311 (Minn.1989) the supreme court stated that the doctrine does not remove from the insured the responsibility to read the policy, but does not hold the insured to an unreasonable level of understanding. Other factors to consider are the presence of an ambiguity, language which operates as a hidden exclusion, communications by the insurer explaining the policy, and whether the provisions in a contract are known by the public generally. Whether the doctrine applies depends on consideration of all the facts and circumstances. *Id.*

Here, the office employee responsible for procuring insurance for Franklin's operations testified that she did not read the policy. There are not hidden ambiguities in the policy itself. Furthermore, given the prominence of the rationale of *Bor–Son* and *Knutson,* the exclusions can only be viewed as a primary part of the policy. Also, as Allied argues, the face of the policy shows the type of coverage by its identification of the insured's work premises as those of a "general contractor."

Based on the limited situations in which it has been applied, and given the factors above, the reasonable expectations doctrine does not apply.

Because of our disposition of the matter on the declaratory judgment action, Franklin is not entitled to requested attorney fees.

### 3. *Miller–Shugart* agreement.

■ Franklin, et al., argue that the trial court improperly rejected the settlement agreement. The parties concede that Allied was not notified of any negotiations leading up to the agreement. The trial court was alarmed that secrecy of negotiations even excluded counsel provided to Franklin by Allied. Notice is a crucial element under *Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn.1982). Moreover, we think it is significant that the agreement in *Miller* was negotiated after the trial court had determined coverage. *Id.* at 732. Here, the trial court had not yet ruled on Allied's declaratory action when the parties negotiated the settlement. Fair dealing was compromised here by denying Allied a chance to decide if it wanted to settle the claims or litigate them.

## DECISION

The trial court correctly determined that the two-year statute of limitations prevented the Association from asserting its claims. The trial court also correctly rejected the parties' settlement agreement. It was error to find coverage under Allied's policy for the claims.

Affirmed in part and reversed in part.