**DAKOTA County, a public body corporate and politic, Appellant,**

v.

**BWBR ARCHITECTS, Inc., M.A. Mortenson Company, Inc., George W. Olsen Construction Company, Inc., A.J. Spanjers Company, Inc., Division 7 Corporation, and Transamerica Assurance Company of California, f/k/a Transamerica Insurance Company, a California corporation, Respondents,**

**and**

**Dalbec Roofing, Inc., Transamerica Premium Insurance Company, a California corporation, Employer's Insurance of Wausau, and AmWest Surety Insurance Company, Defendants.**

**No. C5–01–2194.**

Court of Appeals of Minnesota.

June 4, 2002.

Jeffrey C. Paulson, David D. Hammargren, Paul T. Meyer, Hammargren, Meyer & Paulson, P.A., Minneapolis, for appellant.

Thomas F. Nelson, Michael G. Taylor, Robert L. Smith, Leonard, Street & Deinard, Minneapolis, for respondent BWBR Architects.

Timothy M. O'Brien, John H. Hinderaker, Deborah J. Mackay, Faegre & Benson, P.L.L.P., Minneapolis, for respondent M.A. Mortenson Company.

James A. Reding, Jr., Lars C. Erickson, Reding & Pilney, Oakdale, and David Snyder, Eckberg, Lammers, Briggs, Wolff & Vierling, Stillwater, for respondent George W. Olsen Company.

Patrick Sweeney, JoAnn C. Toth, Spence, Ricke, Sweeney & Gernes, P.A., St. Paul, and Stanley E. Siegel, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for respondent A.J. Spanjers Company.

Kristine A. Kubes, Amy R. Baudler, Thomas R. Olson & Associates, St. Paul, for respondent Division 7 Corporation.

Ronald E. Martell, Moore, Costello & Hart, P.L.L.P., Minneapolis, for respondent Transamerica Assurance Company of California.

Considered and decided by KLAPHAKE, Presiding Judge, HANSON, Judge, and FOLEY, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

KLAPHAKE, Judge.

Appellant challenges the grant of summary judgment to respondents, dismissing its claims for damages for defects to real property arising out of a construction project. Because more than two years passed after appellant should reasonably have discovered an actionable injury, we conclude that the district court did not err in granting summary judgment. Further, because any fraud or misrepresentation by respondents, which could have tolled the statute of limitations or estopped respondents from raising the statute of limitations as a defense, occurred before the discovery of the actionable injury, we affirm the district court on this issue as well.

## FACTS

In 1988, appellant Dakota County entered into a contract with respondent BWBR Architects, Inc., to design the Eastern Administration Building (EAB). That same year, Dakota County hired respondent M.A. Mortenson Company, Inc. to act as construction manager for the project. As part of its contractual duties, Mortenson agreed to inspect all work for compliance with the plans, identify noncompliant work, monitor construction activity, review payment applications, and notify Dakota County if work was noncompliant. Respondents George W. Olsen Construction Company, Inc., and A.J. Spanjers Company, Inc., among others, worked as contractors or subcontractors on the project.[1] Respondent Transamerica Assurance Company of California provided a performance bond for Olsen.[2] It appears undisputed that the work was not completed in compliance with plans, that shortcuts were taken, and that substandard work was accepted by Mortenson, who apparently failed to undertake the inspections contemplated by its contract with Dakota County.

The construction was completed in 1990, and Dakota County occupied the building in February 1991. Beginning in 1992, Dakota County maintenance workers were notified about leaks in the building. The record contains copies of more than two dozen work orders for repair or inspection of leaks or water infiltration performed by Dakota County maintenance staff in the EAB during 1992–94. Essentially, these work orders included every side and every floor of the building.

Dakota County attempted to repair these leaks in a variety of ways, including caulking and sealing areas, sometimes successfully and sometimes to no avail. On September 15, 1994, Dakota County maintenance supervisor, Scott Daggett, sent a letter to Mortenson, BWBR, and Olsen in connection with one chronic leak, asking that they investigate and repair the problem. In this letter, Daggett identified four areas of concern and stated that although Dakota County had attempted to make temporary repairs,

> the original construction design, coordination and workmanship continue to be responsible for this problem. Please take appropriate action immediately to avoid further water damage and deterioration of the structure. * * * Repair work must be completed by November 1, 1994.

Copies of this letter were sent to the EAB building supervisor and the county attorney's office.

1. Respondent Division 7 Corporation and defendant Dalbec Roofing, Inc., are not parties here, having settled with Dakota County.

2. The other insurers have either settled or are in bankruptcy.

Mortenson, Olsen, and BWBR met with Daggett on October 7, 1994, to discuss the water problems. In a follow-up letter, BWBR suggested that Dakota County examine the problem areas more closely and referred Dakota County to Mortenson and Olsen. Mortenson suggested that Dakota County investigate more thoroughly but denied any responsibility. Although Olsen originally offered to make a minor repair, it offered no further information and made no other offers to make any repairs after this meeting. November 1, 1994, passed without any action being taken by Dakota County. Instead, Dakota County continued to undertake piecemeal repairs to correct leakage in the years that followed.

In November 1996, Dakota County asked Howard Noziska, a masonry consultant performing other work for it, to view one of the chronic leaks. Noziska removed some sheetrock and made a cursory inspection, but could not identify a source of the leak. He recommended additional caulking.

In October 1997, Noziska did a thorough investigation at Dakota County's request. He issued a preliminary report on October 28, and a final report on February 26, 1998. He found multiple problems and evidence of non-conforming or substandard construction, including deficiencies not readily noticeable because of concealment by walls and ceilings. Dakota County hired a contractor to make corrective repairs totaling $1.06 million. Dakota County initiated this suit against BWBR, Mortenson, Olsen, and other contractors and subcontractors on November 23, 1998, and December 1, 1998.

On October 19, 2001, the district court granted summary judgment in favor of respondents, concluding that Dakota County's claim was barred by the two-year statute of limitations for claims involving improvements to real property, Minn.Stat. § 541.051, subd. 1 (2000). The district court further held that because any misrepresentations relied on by Dakota County occurred prior to the discovery of an actionable injury, neither fraud nor misrepresentation tolled the statute of limitations or prevented respondents from using a statute of limitations defense. This appeal followed entry of judgment.

## ISSUES

1. Did the district court err in granting summary judgment based on the statute of limitations, Minn.Stat. § 541.051, subd. 1 (2000)?

2. Did the district court err in finding that respondents' misrepresentations or fraudulent concealment, which occurred before discovery of an actionable injury, did not estop respondents from raising a statute of limitations defense?

3. Did the district court err in finding that respondents' misrepresentations or fraudulent concealment of facts, which occurred prior to discovery of an actionable injury, did not toll the statute of limitations?

## ANALYSIS

Summary judgment shall be granted where there are no genuine issues of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. No genuine issue of material fact exists

> when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative * * * to permit reasonable persons to draw different conclusions.

*DLH Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). Introduction of affidavits contradicting earlier damaging deposition testimony is not sufficient to create a ma-

terial fact issue. *Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 881 (Minn.App. 1995).

## I. Statute of Limitations

In actions for damages based on improvements to real property

> [e]xcept where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than two years after discovery of the injury[.]
>
> For purposes [of the above], a cause of action accrues upon discovery of the injury[.]

Minn.Stat. § 541.051, subd. 1(a), (b) (2000). Thus, the statute of limitations begins to run when an actionable injury is discovered or, with due diligence, should have been discovered, regardless of whether the precise nature of the defect causing the injury is known.[3] *The Rivers v. Richard Schwartz/Neil Weber, Inc.*, 459 N.W.2d 166, 168 n. 2 (Minn.App.1990), *review denied* (Minn. Oct. 25, 1990).

Dakota County argues that the leaks it experienced prior to 1997 were minor and either repairable or repaired, and did not give rise to a cause of action. Thus, Dakota County argues, a genuine issue of material fact exists concerning when it should reasonably have discovered that it had an actionable injury.

However, it is undisputed that there were 25 work orders for leaks in all areas of the building between 1992–94, that an invasive repair undertaken in 1994 for one chronic leak revealed faulty construction, and that some repairs were successful while others merely controlled the damage to the building. Most telling, in 1994, Dakota County threatened to take legal action unless repairs were made, but failed to do so despite the fact that no repairs were made. While it can be argued that the leaks from 1992–94 were minor nuisances, the September 15, 1994 letter and the October 7, 1994 meeting clearly show that an actionable injury existed at least as of 1994. This record, taken as a whole, would fail to permit any rational trier of fact to conclude that Dakota County was not aware of an injury. *See DLH v. Russ*, 566 N.W.2d at 71.

Dakota County filed an affidavit minimizing the effect of the 1994 letter by stating that Daggett did not have sufficient expertise to determine if the construction was defective. Expert knowledge is unnecessary, however, because it is knowledge of the injury, not the defect, which triggers the statute of limitations. *See Hyland Hill N. Condo. Ass'n., Inc. v. Hyland Hill Co.*, 549 N.W.2d 617, 621 (Minn. 1996) (basing discovery of injury on observations of water leakage by individual homeowners). Daggett's deposition shows quite clearly the extent of the water problems and the frustration of county employees who attempted to correct them. The fact that Daggett, in opposing summary judgment, filed an affidavit that attempts to downplay the seriousness of the leakage and underscores his lack of engineering

3. Prior to 1988, one had to be aware of the defect causing the injury, which is a more complex question. After the 1988 amendment of the statute, one must be aware of an actionable injury, but the cause of the defect need not be determined. 1988 Minn. Laws ch. 607, § 1.

expertise, does not create a genuine issue of material fact. *See Oreck v. Harvey Homes, Inc.*, 602 N.W.2d 424, 429 (Minn. App.1999) (self-serving affidavit contradicting earlier deposition testimony does not create a genuine issue of material fact), *review denied* (Minn. Jan. 25, 2000).

Dakota County also argues that the various leaks were separate and distinct, or that some of the leaks were discovered well after 1994, so that the statute of limitations should not apply equally to these subsequent leaks. Similar arguments have been rejected by the supreme court, which has concluded that separate injuries must be aggregated under the mantel of defective construction and that the statute of limitations begins to run upon discovery of an actionable injury. *See Hyland Hill*, 549 N.W.2d at 621.

The undisputed facts establish that defects in construction existed in 1994. Had Dakota County undertaken an inspection in 1994 as thorough as that undertaken in 1997, the same problems surely would have been revealed. Because Dakota County failed to act in a timely manner after it should reasonably have been aware of an actionable injury, the district court did not err in granting summary judgment.

### II. Estoppel

Dakota County contends that respondents Mortenson, Spanjers, and Olsen should be estopped from raising the defense of statute of limitations because of misrepresentation or failure to disclose known defects. Dakota County argues that because Mortenson was acting as a fiduciary in its role as construction manager, its failure to disclose known defects should toll the statute of limitations. Further, although some of the problems were known in 1994, because respondents failed to disclose other defects they were aware of or by their silence indicated that the limited repairs Dakota County was undertaking would be sufficient, they should be estopped from raising the statute of limitations.

Estoppel is an equitable doctrine that prevents a party from "taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Mut. Serv. Life Ins. Co. v. Galaxy Builders, Inc.*, 435 N.W.2d 136, 140 (Minn.App.1989) (quotation omitted), *review denied* (Minn. Apr. 19, 1989). To raise estoppel, one most show representations made by one party that the other has reasonably relied on to his detriment. *Id.* Specifically with regard to Minn.Stat. § 541.051, estoppel is pled where, after discovery of a cause of action, the injured party has been induced to forego suit in reliance on the other party's assurances that corrective action would be taken. *Oreck*, 602 N.W.2d at 428; *Mut. Serv. Life Ins. Co.*, 435 N.W.2d at 141.

Here, Dakota County threatened to take legal action in 1994; none of the respondents claimed responsibility at that time or otherwise undertook repairs. Any assurances respondents made during construction or before problems arose are not sufficient to permit estoppel. *See Oreck*, 602 N.W.2d at 429; *The Rivers*, 459 N.W.2d at 170 (concluding that assurances of repair made in 1982 insufficient to raise estoppel issue in action brought in 1987).

"The application of equitable estoppel is a question of fact unless only one inference can be drawn from the facts." *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 622 (Minn.App.2000) (citation omitted). Because there were no assurances of repair after construction was completed that Dakota County might have relied on to forego suit, the district court did not err in its application of the law.

### III. Fraud

Dakota County relies on the language of Minn.Stat. § 541.051, subd. 1, which begins "[e]xcept where fraud is involved," to argue that the statute of limitations was tolled until evidence of respondents' fraudulent concealment of all defects was discovered. Dakota County claims respondents committed fraud when they filed payment applications certifying that all work had been completed in accordance with specifications and when they thereafter failed to disclose the defective work, knowing that walls and ceilings hid those defects. Because Mortenson was acting in a fiduciary relationship with it, Dakota County argues that it need not show affirmative acts of concealment and that Mortenson's silence is sufficient. *See Cohen v. Appert,* 463 N.W.2d 787, 790–91 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991).

In *Mut. Serv. Life Ins.*, respondent guaranteed in 1982 that the floor thickness of the building was four to six inches. In 1983, MSI discovered that the floor was only two to four inches thick. This court held that fraud tolls the statute of limitations only until the fraud is discovered. *Id.*, 435 N.W.2d at 140; *see also Cohen,* 463 N.W.2d at 790–91 (concluding that fraud tolls statute of limitations only until concealment is or could have been discovered with reasonable diligence). Thus, fraud is relevant only to the extent that it postpones the time until a party discovers or in the exercise reasonable diligence, should have discovered, the defective conditions.

The *Mut. Serv. Life Ins.* court relied on the opinion of *Wittmer v. Ruegemer,* 419 N.W.2d 493, 497–98 (Minn.1988), where the supreme court stated:

> With respect, however, to the two-year limitation period, it is apparent that fraud does not toll the statute because the limitation period does not, according to its terms, begin to run until discovery of the defective condition. Of course, fraudulent concealment is relevant if it is contended that the plaintiff should, by exercising reasonable diligence, have sooner discovered the defective condition.[4]

Here, fraudulent concealment by respondents is relevant only insofar as it prevented Dakota County from learning of its injury. Once Dakota County discovered an actionable injury, fraudulent concealment no longer tolled the statute of limitations. The trigger was discovery of an actionable injury, not all possible actionable injuries. Otherwise, the statute of limitations, whose purpose is to lay to rest disputes over damages to real property, would have no real effect as injuries are doled out separately over a number of years. The district court thus did not err on this issue.

### DECISION

The district court did not err in granting summary judgment to respondents. Viewing the evidence in a light most favorable to Dakota County, there are no genuine issues of material fact that would preclude a grant of summary judgment. Any misrepresentations or fraudulent concealment by respondents of defective construction occurred prior to the point at which Dakota County should reasonably have discovered an actionable injury. Respondents thus are not estopped from raising the statute of limitations as a defense, nor is

4. *Wittmer* is a pre 1988 case; thus, discovery of the defective condition, rather than an actionable injury, was necessary.

the statute of limitations tolled beyond the point of discovery. In light of this decision, we need not rule on respondent Transamerica's notice of review.

**Affirmed.**