*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0724**

328 Barry Avenue, LLC,
Appellant,

vs.

Nolan Properties Group, LLC, defendant and third party plaintiff,
Respondent,

vs.

Carciofini Company, third party defendant,
Respondent,
Marvin Windows, Inc., third party defendant,
Respondent,
Minuti-Ogle Co., Inc., third party defendant,
Respondent,
R. T. L. Construction, Inc., third party defendant,
Respondent,
Stellar Contractors, Inc. d/b/a Stellar Concrete & Masonry, third party defendant,
Respondent.

**Filed February 2, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27-CV-12-20125

J. Robert Keena, Hellmuth & Johnson, P.L.L.C., Edina, Minnesota (for appellant)

Michael A. Breen, Amy M. Sieben, Fisher, Bren & Sheridan, L.L.P., Minneapolis, Minnesota (for respondent Nolan Properties Group, LLC)

Cara C. Passaro, Murphy & Passaro, P.A., Mendota Heights, Minnesota (for respondent Carciofini Company)

Michael E. Obermueller, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for respondent Marvin Windows, Inc.)

Justin P. Short, Timothy A. Sullivan, Kyle R. Hardwick, Best & Flanagan, L.L.P., Minneapolis, Minnesota (for respondent Minuti-Ogle Co., Inc.)

Neal J. Robinson, The Cincinnati Insurance Co., Coon Rapids, Minnesota (for respondent R.T.L. Construction, Inc.)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

On appeal from the district court's grant of summary judgment to respondents, appellant argues that (1) genuine issues of material fact exist as to when appellant discovered its injury for statute-of-limitation purposes; (2) the district court misinterpreted Minnesota's statute of limitations; and (3) genuine issues of material fact exist regarding whether equitable estoppel should have precluded summary judgment. We affirm.

## FACTS

Appellant 328 Barry Avenue, LLC (328 Barry) and respondent Nolan Properties Group, LLC (NPG) are limited-liability companies located at 328 Barry Avenue in Wayzata. Both companies have the same sole owner, John Nolan. 328 Barry owns the property and used NPG as general contractor for the construction of a building on the property. Construction began in 2008. As general contractor, NPG entered into contracts with several subcontractors, including respondents Carciofini Company, Marvin

2

Windows, Inc., Minuti-Ogle Co., Inc. (MOC), R.T.L. Construction, Inc., and Stellar Contractors, Inc. d/b/a Stellar Concrete & Masonry. But, according to Nolan, there was no construction contract between 328 Barry and NPG.

In October 2009 while construction was ongoing, NPG discovered water intrusion on the property. It asked MOC to correct the water leakage on the east side of the building. MOC applied clear silicone to two window joints and suggested that NPG get the window tested. Two weeks later, NPG asked MOC to perform additional work because water was still leaking. When MOC returned to inspect the property on November 3, NPG and MOC used a garden hose to spray the building and saw water "slowly seep[ing] in" through a window. MOC again told NPG to get the window tested. The record contains no evidence that MOC corrected the problem or that NPG tested the windows at this time. When 328 Barry received a certificate of occupancy for the property in January 2010, not every floor of the building had been completed.

NPG next contacted MOC in August 2010 regarding water infiltration. In response, MOC again recommended that NPG test the windows and window caulking. MOC referred NPG to a forensic building scientist who could test the windows.

In early 2011, NPG hired Indigo Environmental "to assess the stucco cladding at the East elevation to determine the source for the water intrusion into the 2008 constructed building." According to Indigo, water infiltration had previously been observed "on the East elevation first and second floor[s]" but was now observed "from the North first and second floor windows" and occasionally "from the middle windows on each floor." Indigo completed its report in June 2011 and determined that "building

3

materials were installed contrary to the written specifications." NPG later hired other companies to analyze the property and discovered several areas of water damage.

On October 3, 2012, 328 Barry filed suit against NPG, alleging that its actions as general contractor were negligent. NPG denied responsibility and sued Carciofini, Marvin, MOC, and R.T.L. for contribution and indemnification. NPG later amended its third-party complaint to include Stellar.

Nolan was deposed as both the representative of appellant 328 Barry and the representative of respondent NPG. On behalf of NPG, he stated that all of the issues raised during construction in 2009 with the windows, doors, and caulking were "addressed and corrected" by the subcontractors. As a result, according to NPG, everything was fixed and there were no water-intrusion issues until August 2010. Nolan agreed that the location of the current water intrusion was the same as the intrusion in 2009 but disagreed that the cause of the intrusion was the same.

The parties brought five motions for summary judgment, and the district court conducted a hearing on the competing motions.[1] In February 2014, the district court granted Carciofini and MOC's joint motion for summary judgment based on 328 Barry's failure to bring suit within the statute of limitations and dismissed the other motions. The district court explained that, because 328 Barry served NPG with its summons and complaint on June 14, 2012, it must have discovered its injury after June 14, 2010 to have

---

[1] After the hearing, 328 Barry reached a settlement with Stellar Contractors "on a [*Pierringer*] basis." In a *Pierringer* release, a plaintiff settles a claim with one or more defendants, the settling defendants are dismissed, and any cross-claims involving those defendants are also dismissed. *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn. 1978).

met the statute of limitations. *See* Minn. R. Civ. P. 3.01(a). The district court concluded that 328 Barry first discovered the water infiltration in October 2009 and that this water infiltration "is the same injury [328 Barry] is complaining of now." The district court therefore dismissed 328 Barry's complaint because it failed to file suit within the statute of limitations.

328 Barry requested reconsideration of the district court's order, arguing that the district court erred in its analysis of the statute of limitations. One day before the filing of this request, the district court judge who had heard the case retired. After another district court judge was assigned to the case, 328 Barry again moved for reconsideration. The new district court judge denied 328 Barry's motion for reconsideration. 328 Barry appeals.[2]

**D E C I S I O N**

**I.**

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from an award of summary judgment, this court reviews de novo whether there is a genuine issue of material fact and whether the district court erred when it applied the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). "We view the

---

[2] After the filing of this appeal, the parties stipulated to the dismissal of all claims against Stellar, and the district court ordered the dismissal.

evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

The statute of limitations at issue states:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury, nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

Minn. Stat. § 541.051, subd. 1(a) (2014). Under this subdivision, "a cause of action accrues upon discovery of the injury." *Id.*, subd. 1(c) (2014).

328 Barry argues that, under section 541.051, subdivision 1(a), "[a]n 'actionable' injury requires knowledge of NPG's and its [s]ubcontractor[s'] negligence and resulting damage that required repair." (Emphasis omitted). But 328 Barry misstates the statutory standard. Before the amendment of this statute of limitations in 1988, "one had to be aware of the defect causing the injury." *Dakota Cnty. v. BWBR Architects*, 645 N.W.2d 487, 492 n.3 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). Now, "the statute of limitations begins to run when an actionable injury is discovered or, with due diligence, should have been discovered, regardless of whether the precise nature of the

6

defect causing the injury is known." *Id.* at 492. "[A] party need not be aware of the extent of its injury for the statute of limitations to begin to run so long as the party is aware of the injury and the need for repairs." *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 334 (Minn. 2010).

The district court determined that 328 Barry learned of the water intrusion in October 2009, that the 2009 problem was not fixed, and that 328 Barry sued for the "same injury" in 2012. 328 Barry argues that a genuine issue of material fact exists about when it discovered its injury because the 2009 water intrusion was corrected, and it discovered a new injury in August 2010.[3] As evidence, 328 Barry cites Nolan's deposition, in which he stated that all issues discovered during construction in 2009 were "addressed and corrected" by the subcontractors and that there were no water-intrusion problems until August 2010. Even viewing Nolan's testimony in the light most favorable to 328 Barry, Nolan's testimony merely averred that the 2009 water-intrusion problem was corrected. This averment is not enough to resist a motion for summary judgment. *See DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) ("[T]he party resisting summary judgment must do more than rest on mere averments.").

Contrary to 328 Barry's assertion, the record contains no evidence supporting Nolan's averment that the 2009 water-intrusion problem was corrected. MOC applied

---

[3] The parties do not dispute that 328 Barry discovered water infiltration in October 2009. Because Nolan acted as the sole owner and decision-maker for both 328 Barry and NPG, NPG's knowledge can be imputed to 328 Barry. *See Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 896 (Minn. 2006) (explaining that knowledge is attributed from agent to principal when agent acquires the knowledge in the course of his employment); *see also Day Masonry*, 781 N.W.2d at 334 (stating that custodians' knowledge of leaks is imputed to their employer).

clear silicone to two window joints in October 2009. But this action did not fix the water leakage, and NPG asked MOC to perform additional repairs. MOC returned to inspect the property in November 2009 and, with NPG, performed an unscientific garden-hose test, which uncovered continued water leakage. The record contains no evidence that MOC performed any additional repairs in November 2009. Similarly, MOC told NPG to get the windows tested, but there is no evidence that NPG tested the windows or any other part of the building until early 2011, after noticing water infiltration in August 2010.

Section 541.051, subdivision 1(a) requires a plaintiff to file suit no more than two years after discovering an actionable injury. Minn. Stat. § 541.051, subd. 1(a). But the statute of limitations begins to run when the plaintiff discovers or *should have discovered* an actionable injury. *BWBR Architects*, 645 N.W.2d at 492. Even viewing the record in the light most favorable to 328 Barry, we agree with the district court that 328 Barry discovered its injury in October 2009. At the latest, 328 Barry should have discovered its injury in November 2009 because the garden-hose test uncovered continued leakage and there is no evidence that this leakage was corrected. Given the leakage during the garden-hose test, it was not reasonable for 328 Barry to conclude that the problem was corrected in 2009. Because 328 Barry discovered its injury in October 2009, was aware of the need for repairs, and did not correct the problem, the statute of limitations began to run at that time. *See Day Masonry*, 781 N.W.2d at 334 (explaining that the statute of limitations begins to run when "the party is aware of the injury and the need for repairs");

8

*BWBR Architects*, 645 N.W.2d at 492 (suggesting that, when an injury is discovered and not corrected, the statute of limitations begins to run at the date of discovery).

The district court did not err in determining that there were no genuine issues of material fact regarding 328 Barry's knowledge of its injury in October 2009 and that the statute of limitations began to run at that time. Because 328 Barry served its summons and complaint in June 2012—over two years after discovering its injury—the district court properly granted summary judgment to respondents. *See* Minn. Stat. § 541.051, subd. 1(a).

## II.

328 Barry next argues that the statute of limitations cannot begin to run until the completion of construction. The district court rejected this argument as a confusion of the statute of limitations and statute of repose.[4]

Section 541.051 contains both a statute of limitations and a statute of repose. *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 643 (Minn. 2006). "[A] statute of limitations limits the time within which a party can pursue a remedy (that is, it is a procedural limit), whereas a statute of repose limits the time within which a party can acquire a cause of action (thus it is a substantive limit)." *Id.* at 641. Based on the clear

---

[4] 328 Barry also argues that the district court used an "improper trigger" for the statute of limitations because it referred to the "defect" and the "discovery of the defect" several times in its written order. But the district court also made multiple references to the "injury" and cited the proper legal standard that "a cause of action accrues upon discovery of the injury." *See* Minn. Stat. § 541.051, subd. 1(c). Given the district court's conclusion that the 2009 and 2010 water infiltrations were the "same injury" and that 328 Barry was aware of its "injury" in 2009, we disagree that the district court applied an improper legal standard under section 541.051, subdivision 1(a).

9

language of section 541.051, subdivision 1(a), a plaintiff has "two years after discovery of the injury" to bring suit and meet the statute of limitations, and "ten years after substantial completion of the construction" to accrue a cause of action and meet the statute of repose. *See* Minn. Stat. § 541.051, subd. 1(a); *see also Fiveland v. Bollig & Sons, Inc.*, 436 N.W.2d 478, 481 (Minn. App. 1989) ("[T]he legislature has expressly provided two separate limitation periods: one running for two years commencing upon discovery of the injury; and the other running for 10 years from the substantial completion of construction."), *review denied* (Minn. Apr. 24, 1989). At oral argument before this court, 328 Barry conceded that the language "substantial completion of the construction" does not apply to the two-year statute of limitations under section 541.051, subdivision 1(a).

But 328 Barry argues that the concept of "substantial completion" should still apply to the two-year statute of limitations. This argument has been previously rejected by this court. In *Fiveland,* we concluded that "[t]he legislature has . . . considered the importance of the time of substantial completion of construction as a measure for commencing a time period, and has chosen not to use this point as commencement for the two-year limitation period."[5] 436 N.W.2d at 481.

---

[5] 328 Barry suggests that section 541.051, subdivision 4 and *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672 (Minn. 2004) support its argument that the statute of limitations "cannot begin to run until the improvement is completed." We disagree. Section 541.051, subdivision 4 applies to suits based on a breached warranty, and is inapplicable to 328 Barry's lawsuit. *See* Minn. Stat. § 541.051, subd. 4 (2014). Moreover, in *Vlahos,* the supreme court rejected a respondent's argument that a phrase in subdivision 1 was synonymous with a different phrase in subdivision 4. 676 N.W.2d at 677 n.4.

328 Barry also argues that no Minnesota case has "dismissed a lawsuit because a defect was discovered during ongoing construction and before substantial completion of construction." But respondents cite two cases dismissing lawsuits when injuries were discovered before the completion of construction. In *O'Connor v. M.A. Mortenson Co.*, an employee was injured while working on a construction site and sued over five years later. 424 N.W.2d 92, 93 (Minn. App. 1988), *review denied* (Minn. July 28, 1988). This court applied a previous version of Minn. Stat. § 541.051, subd. 1, and determined that the employee's suit was "barred by the statute's two-year statute of limitations." *Id.* at 94-95. In *Fiveland*, a homeowner sued the contractor and subcontractors working on his home over two years after he was injured during construction. 436 N.W.2d at 479. This court again determined that the suit was barred by the two-year statute of limitations. *Id.* at 481.

328 Barry argues that *O'Connor* and *Fiveland* are inapplicable because they involve personal injuries. But neither case contains language limiting its analysis of the two-year statute of limitations to personal-injury actions. Indeed, the statute is clear that it applies to both personal and property injuries. *See* Minn. Stat. § 541.051, subd. 1(a). In *Fiveland*, this court explained that the two-year statute of limitations commences upon discovery of an injury and that the legislature did not toll this limitation period during the course of construction. 436 N.W.2d at 481.

The district court properly concluded that construction need not be completed before the start of the two-year limitation period, and it did not err in its analysis of section 541.051, subdivision 1.

11

## III.

Finally, 328 Barry argues that genuine issues of material fact regarding its equitable-estoppel argument precluded summary judgment. Equitable estoppel is "intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Brown v. Minn. Dep't of Pub. Welfare*, 368 N.W.2d 906, 910 (Minn. 1985) (quotation omitted). "Specifically with regard to Minn. Stat. § 541.051, estoppel is pled where, after discovery of a cause of action, the injured party has been induced to forego suit in reliance on the other party's assurances that corrective action would be taken." *BWBR Architects*, 645 N.W.2d at 493.

In *Rhee v. Golden Home Builders, Inc.*, the homeowners notified their builder of water infiltration in their new home. 617 N.W.2d 618, 620 (Minn. App. 2000). The builder then assured the homeowners that it would fix the problem, "made numerous unsuccessful repair attempts and repeatedly told the [homeowners] that eventually the problem would be solved." *Id.* When the homeowners finally sued, the builder attempted to assert a statute-of-limitations defense. *Id.* This court held that there was a genuine issue of material fact regarding whether the builder "is equitably estopped from asserting a statute-of-limitations defense." *Id.* at 622.

328 Barry argues that "[t]his case is on point with *Rhee*" because NPG assured it that the building would be repaired. But the record contains no evidence of an assurance from NPG to 328 Barry. Contrary to 328 Barry's allegation, NPG's decision to ask MOC to perform additional work in 2009 does not provide evidence of an assurance *to 328 Barry* that it would correct the problem. In addition, there is no evidence that MOC or

12

any other subcontractor provided assurance to NPG. To the contrary, MOC recommended that NPG test the windows and denied responsibility for the water intrusion; it did not assure NPG that it would take corrective action.

Rather than being "on point with *Rhee*," this case is similar to *Oreck v. Harvey Homes, Inc.*, 602 N.W.2d 424 (Minn. App. 1999), *review denied* (Minn. Jan. 25, 2000). In *Oreck*, the homeowners notified their contractor of several continuing problems involving water leakage. 602 N.W.2d at 426. The contractor examined the house, asked a subcontractor to perform repair work, and made other suggestions regarding the problems. *Id.* The homeowners sued the contractor over two years after discovering their injuries. *Id.* Because there was no evidence that the contractor made assurances to the homeowners that it would correct the problems, this court concluded that the contractor was not equitably estopped from asserting a statute-of-limitations defense. *Id.* at 429, 431. As in *Oreck*, there is no evidence that NPG promised to correct 328 Barry's water-infiltration problem and there is no evidence that NPG induced 328 Barry to delay filing suit. *See id.* at 429.

Because there is no evidence that 328 Barry relied on any assurances that corrective action would be taken, it cannot raise an equitable-estoppel argument to the running of the statute of limitations. *See BWBR Architects*, 645 N.W.2d at 493. And there is no genuine issue of material fact regarding whether equitable estoppel precluded the district court's grant of summary judgment to respondents. *See Oreck*, 602 N.W.2d at

13

428 ("[W]hen only one inference can be drawn from the facts, the question is one of law," rather than one for the jury. (quotation omitted)).[6] We therefore affirm.

**Affirmed.**

---

[6] Because we affirm the district court's grant of summary judgment to respondents, we do not consider respondents' argument that the summary-judgment order could be affirmed on alternative grounds.