STATE OF MINNESOTA

IN SUPREME COURT

A14-1395

Hennepin County

Rene Julian McKenzie,

Appellant,

vs.

State of Minnesota,

Respondent.

Gildea, C.J.
Took no part, Hudson, J.

Filed: December 23, 2015
Office of Appellate Courts

_____

Rene Julian McKenzie, Rush City, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.     Because appellant failed to prove that the State substantially interfered with the decisions of appellant's witnesses regarding whether to testify at the postconviction hearing, appellant's constitutional claims fail.

2.     Because appellant did not prove that the State's actions constituted "egregious misconduct" under *State v. Peirce*, 364 N.W.2d 801 (Minn. 1985), the postconviction court properly refused to grant use immunity to appellant's witnesses.

1

3. Because appellant produced insufficient evidence to satisfy the postconviction court that a trial witness's testimony was false, the court did not abuse its discretion when it denied appellant's request for a new trial.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

GILDEA, Chief Justice.

This case comes to us on appeal from the denial of Rene Julian McKenzie's petition for postconviction relief. McKenzie filed a petition for postconviction relief based on two third-party affidavits, alleging that a witness had recanted his trial testimony. The postconviction court granted an evidentiary hearing to determine the credibility of the alleged recantation. At the hearing, the assistant county attorney informed the trial witness who allegedly recanted of the consequences should he testify falsely. The trial witness and the affiants invoked their Fifth Amendment right to remain silent, and the postconviction court refused to grant use immunity to appellant's witnesses. Following the hearing, the postconviction court denied the petition, explaining that it was not well satisfied that the trial witness's testimony was false. McKenzie appeals, arguing the State violated his Fourteenth Amendment right to due process by substantially interfering with the decisions of his witnesses about whether to testify at the postconviction hearing. He also argues that the postconviction court erred by not granting use immunity to his witnesses and by finding that he presented insufficient evidence to warrant a new trial. Because McKenzie failed to prove that the State substantially interfered with the witnesses' decisions about whether to

2

testify, and because the postconviction court did not abuse its discretion by refusing to grant use immunity or by denying the postconviction petition, we affirm.

Following a jury trial, McKenzie was convicted of first-degree murder for the death of Perry Pajunen.[1] Pajunen was shot four times while visiting the home McKenzie shared with his friend and died as a result of the shooting. At trial, McKenzie argued that his friend was the one who shot Pajunen, and that he assisted in disposing of the body because his own life was threatened. A witness for the State, Wendell Martin (Martin Sr.), testified that McKenzie had confessed to the killing while the two of them shared a holding cell. The jury found McKenzie guilty of first-degree premeditated murder, and the district court convicted McKenzie and sentenced him to life in prison. We affirmed the conviction. *State v. McKenzie*, 511 N.W.2d 14, 17 (Minn. 1994). McKenzie filed his first petition for postconviction relief in 2007, and we held that those claims were procedurally barred under *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). *McKenzie v. State*, 754 N.W.2d 366, 370 (Minn. 2008).

McKenzie filed his current petition for postconviction relief on November 26, 2012, alleging that Martin Sr. provided false testimony at McKenzie's murder trial. McKenzie produced affidavits of LaMonte Martin (Martin Jr.) and Heidi Mastin, Martin Sr.'s son and ex-wife, respectively, in which each asserted that Martin Sr. told them that he had lied at McKenzie's trial. The postconviction court granted an evidentiary hearing to assess the credibility of Mastin, Martin Jr., and Martin Sr.

---

[1]     A full statement of the facts underlying the conviction can be found in our decision on direct appeal, *State v. McKenzie*, 511 N.W.2d 14, 15-16 (Minn. 1994).

3

Prior to the hearing, however, Martin Jr. and Mastin pleaded guilty to bribery and witness tampering in relation to Martin Jr.'s own petition for postconviction relief. Mastin's plea agreement contained a provision prohibiting her from testifying in McKenzie's postconviction matter, and on advice of counsel, she withdrew the affidavit she had provided McKenzie. During a conference prior to the evidentiary hearing on McKenzie's petition, the postconviction court declared this provision in Mastin's plea agreement unenforceable.

Martin Sr. failed to appear at the evidentiary hearing. A warrant was issued for his arrest, and he turned himself in the next morning. The assistant county attorney then met briefly with Martin Sr. At the meeting, Martin Sr. told the assistant county attorney that his trial testimony was the "absolute truth."

At the rescheduled evidentiary hearing, the assistant county attorney informed the court that he had a reasonable and substantial belief that if Martin Sr. "were to testify that he would potentially be providing false testimony." The assistant county attorney further explained that he had told Martin Sr.'s attorney that the State "would pursue charges consistent with that" belief if Martin Sr. were to testify falsely.

Based on the advice of counsel, Mastin, Martin Jr., and Martin Sr. all invoked their Fifth Amendment right against self-incrimination. McKenzie argued that the assistant county attorney acted improperly when he met with Martin Sr. without Martin Sr.'s appointed counsel present, and by threatening and intimidating McKenzie's witnesses. Because of this alleged misconduct, McKenzie asked the postconviction court to grant use

4

immunity to the three witnesses under Minn. Stat. § 609.09, subd. 1 (2014), for their testimony.

The postconviction court found that Martin Sr. was not represented by counsel when he met with the assistant county attorney and refused to grant use immunity to McKenzie's witnesses. Based on the record before it, the court was not well satisfied that Martin Sr.'s trial testimony was false, and therefore it denied McKenzie's petition for postconviction relief. McKenzie appeals from the order denying relief.

We review the denial of postconviction relief for an abuse of discretion. *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010). In doing so, we review the postconviction court's legal conclusions de novo, *Davis v. State*, 784 N.W.2d 387, 390 (Minn. 2010), and its findings of fact for clear error, *Doppler v. State*, 771 N.W.2d 867, 875 (Minn. 2009).

I.

We first consider McKenzie's contention that his Fourteenth Amendment right to due process was violated because the State substantially interfered with his witnesses' decisions about whether to testify at the postconviction hearing.[2] Although we have considered claims that a government actor interfered with a defense witness before or

---

[2]    McKenzie asserts in his brief that this same alleged interference also violated his Sixth Amendment right to compulsory process. In *Burrell v. State*, we recognized that neither our court nor the Supreme Court has ever held that the right to compulsory process extends to postconviction proceedings. 858 N.W.2d 779, 786 (Minn. 2015). We need not discuss this issue further in this case, however, because McKenzie makes no argument to support his assertion that his Sixth Amendment right, assuming it applies, was violated. *See Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995) (requiring appellant's allegations to be "more than argumentative assertions without factual support" (quoting *Beltowski v. State*, 289 Minn. 215, 217, 183 N.W.2d 563, 564 (1971))).

during a criminal trial, *see, e.g.*, *State v. Graham*, 764 N.W.2d 340, 348-50 (Minn. 2009), we have never considered a claim that a government actor interfered with a witness before or during a postconviction evidentiary hearing.[3]

In this case, we need not decide the exact form of assistance that due process requires in a postconviction proceeding. Even assuming McKenzie's rights are coextensive with those of a criminal defendant at trial, he is not entitled to any relief because he failed to prove that the State substantially interfered with the decisions made by his witnesses about whether to testify at the postconviction hearing.

Under the test that would be applied in the context of a criminal defendant at trial, the defendant must prove that (1) a government actor interfered with a defense witness's decision to testify; (2) the interference was substantial; and (3) the defendant was prejudiced by the conduct. *Colbert v. State*, 870 N.W.2d 616, 625 (Minn. 2015); *Graham*, 764 N.W.2d at 349 ("In determining whether the State has infringed on a defendant's constitutional right to present a defense . . . 'the dispositive question in each case is whether the government actor's interference with a witness's decision to testify was

---

[3]     When a government actor substantially interferes with a defense witness before or during a criminal trial, a defendant's Fourteenth Amendment right to due process is implicated. *Webb v. Texas*, 409 U.S. 95, 98 (1972); *Graham*, 764 N.W.2d at 349. Although it is clear that the Fourteenth Amendment imposes no obligation on the states to provide postconviction relief mechanisms, *Carlton v. State*, 816 N.W.2d 590, 611 (Minn. 2012) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987)), it is unclear what form of assistance, if any, must be provided when a state chooses to offer help to those seeking relief from convictions. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009). Due process does not "dictate the exact form such assistance must assume"; instead, each state has "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* (quoting *Finley*, 481 U.S. at 559).

"substantial." ' " (quoting *United States v. Serrano*, 406 F.3d 1208, 1216 (10th Cir. 2005))). We apply this test to the decisions Mastin and Martin Sr. made about whether to testify at the postconviction hearing.[4]

A.

As to Heidi Mastin, McKenzie asserts that the State improperly coerced her into a plea agreement in a collateral matter that restricted her from testifying on behalf of McKenzie. Mastin did enter a plea agreement with the State that purported to prevent her from providing testimony in McKenzie's case, but the postconviction court declared this provision unenforceable during a conference prior to the evidentiary hearing. The plea provision therefore had been deemed unenforceable when Mastin asserted her Fifth Amendment privilege at the evidentiary hearing. Mastin could have resubmitted the affidavit that she had previously withdrawn or could have testified consistent with her statement. Instead, and on advice of counsel, she invoked her Fifth Amendment privilege and freely chose not to testify. Based on our review of the record, we conclude that the State did not substantially interfere with Mastin's decision about whether to testify at the postconviction hearing.

B.

McKenzie also argues that the assistant county attorney substantially interfered with Martin Sr.'s decision to testify at the postconviction hearing by (1) interviewing Martin Sr.

---

[4]     Although McKenzie argues that the State intimidated all three witnesses who refused to testify at the evidentiary hearing, he produces no evidence that the State acted improperly in regard to Martin Jr. and so we do not consider this aspect of his claim.

either shortly before or after he was appointed counsel, and (2) threatening Martin Sr. with a perjury prosecution should he testify falsely.

1.

McKenzie contends that because the assistant county attorney interviewed Martin Sr. without the presence of counsel to represent Martin Sr., the assistant county attorney's behavior amounts to improper interference. For McKenzie's argument to have merit, the assistant county attorney must have interviewed Martin Sr. outside the presence of counsel *after* the postconviction court had appointed counsel to represent Martin Sr.[5] This fact was disputed below. The postconviction court resolved this dispute in the State's favor, finding that Martin Sr. was not represented by counsel at the time of the interview. If we affirm this finding of fact, we need not reach the question of whether an interview conducted outside the presence of counsel constitutes improper interference for purposes of the due process test. We therefore begin our analysis by reviewing the postconviction court's finding of fact.

We review a postconviction court's findings of fact for clear error. *Martin v. State*, 865 N.W.2d 282, 290 (Minn. 2015). If there is sufficient evidence to support a postconviction court's finding, the finding will stand. *Ferguson v. State*, 645 N.W.2d 437, 442 (Minn. 2002).

The postconviction court found that the assistant county attorney's interview with Martin Sr. occurred before he was appointed counsel, at 11:30 a.m., on November 22,

---

[5] McKenzie cites no legal authority to support his contention that an interview with an unrepresented witness is improper.

8

2013. Because Martin Sr. was not represented by counsel when the assistant county attorney interviewed him, the postconviction court reasoned, there was no ethical violation. *See* Minn. R. Prof. Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another . . . ."). In making its determination, the postconviction court relied on court documents to establish the time of appointment and cited official e-mail notifications from the court clerk to confirm the timeline. The documents the court cited support the court's findings. Accordingly, we hold that the postconviction court's finding that Martin Sr. was not represented by counsel at the time of the interview was not clearly erroneous.

2.

McKenzie also alleges that the assistant county attorney substantially interfered with Martin Sr.'s decision regarding whether to testify at the evidentiary hearing by threatening prosecution should Martin Sr. testify falsely. The postconviction court did not address this argument at the evidentiary hearing or in its order. If an issue was not addressed by the district court, we generally will not consider the issue, even if it was raised below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). We may, however, "decide an issue not determined by a trial court where that question is decisive of the entire controversy and where there is no possible advantage or disadvantage to either party in not having a prior ruling on the question." *Harms v. Indep. Sch. Dist. No. 300, LaCrescent*, 450 N.W.2d 571, 577 (Minn. 1990); *see also Foss v. Kincade*, 766 N.W.2d 317, 323 (Minn. 2009) (agreeing with the court of appeals' decision to address, "in the interest[s] of judicial economy," an issue that was raised below but not resolved by the district court). We have

9

determined that a party was not disadvantaged when the previously unaddressed issue involved a legal question and the parties had an opportunity to brief the question. *Woodhall v. State*, 738 N.W.2d 357, 363 n.6 (Minn. 2007). Because both parties have had an opportunity to brief this issue, and because the facts are not in dispute, we turn to the merits of McKenzie's claim that the assistant county attorney violated McKenzie's rights by threatening Martin Sr. with prosecution should he testify falsely.

The United States Court of Appeals for the Second Circuit has stressed that "a due process violation does not arise merely . . . because the government warns a defense witness of the consequences of committing perjury." *United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000). A warning of possible self-incrimination violates due process only when "the government actor's interference with a witness's decision to testify [is] 'substantial.'" *Graham*, 764 N.W.2d at 349 (quoting *Serrano*, 406 F.3d at 1216). The requisite warnings may not be given in a fashion that exerts "such duress on the witness'[s] mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb v. Texas*, 409 U.S. 95, 98 (1972). Factors to consider when determining whether a government actor's action substantially interferes with a witness's decision to testify include "the manner in which the prosecutor or judge raises the issue, the language of the warnings, and the prosecutor or judge's basis in the record for believing the witness might lie." *United States v. True*, 179 F.3d 1087, 1090 (8th Cir. 1999) (quoting *United States v. Vavages*, 151 F.3d 1185, 1190 (9th Cir. 1998)). Courts have not found due process violations in cases in which there was a high probability that the witness would commit

perjury, *id.*, and those in which the defense witness was independently represented by counsel, *State v. Swyningan*, 304 Minn. 552, 557, 229 N.W.2d 29, 33 (1975).

Our review of the record convinces us that the assistant county attorney's statement did not substantially interfere with Martin Sr.'s decision to testify. First and perhaps most importantly, Martin Sr. stated on the record that he was "*not worried about [the State] prosecuting [him]*," and that fear of prosecution was "not why [he was] not testifying." Additionally, the assistant county attorney had a strong basis to believe that Martin Sr. might lie under oath, as Martin Sr. had been previously implicated in Martin Jr.'s witness bribery scheme. The assistant county attorney reasonably believed that Martin Sr. testified truthfully at McKenzie's trial and that he told the truth during the November 22, 2013 interview, in which Martin Sr. maintained that he "knew what [] McKenzie was trying to do" and confirmed that his trial testimony was "the absolute truth." Moreover, the assistant county attorney's statement that he "had information that if Wendell Martin Senior were to testify that he would potentially be providing false testimony" and that the State "would pursue charges consistent with that," merely informed Martin Sr. of the consequences should he testify falsely. Martin Sr. was not threatened with prosecution regardless of the content of his testimony, but only if he testified falsely. *Cf. Swyningan*, 304 Minn. at 556-57, 229 N.W.2d at 33 (citing *Commonwealth v. Jennings*, 311 A.2d 720 (Pa. Super. Ct. 1973) (finding a due process violation when the state threatened prosecution regardless of the content of the witness's testimony)). Finally, Martin Sr. was represented by independent counsel at the evidentiary hearing and asserted his Fifth Amendment privilege only after consulting his attorney. Considering all of this evidence, it is clear that

11

McKenzie did not prove that the assistant county attorney interfered with Martin Sr.'s decision. Therefore, we hold that McKenzie's claim under the Fourteenth Amendment fails.

II.

We next consider whether the postconviction court erred in failing to grant statutory use immunity to Mastin, Martin Jr., and Martin Sr. for their testimony. McKenzie argues that because the State substantially interfered with his witnesses' decisions about whether to testify at the postconviction hearing, the postconviction court should have granted use immunity to the witnesses.

As an initial matter, "[i]t is unclear whether Minnesota's immunity statute applies to a postconviction hearing." *Martin v. State*, 865 N.W.2d 282, 289 (Minn. 2015). Assuming the statute does apply, Minn. Stat. § 609.09, subd. 1 (2014), states that a judge may order immunity from prosecution "if it appears a person may be entitled to refuse to answer a question . . . on the ground that the person may be incriminated thereby, and if the prosecuting attorney, in writing, requests the . . . judge . . . to order that person to answer the question," but only if the judge "finds that to do so would not be contrary to the public interest." The plain language of the statute indicates that the court may grant immunity to witnesses only after a request from the prosecutor. *Id.* No such request was made here.

We have interpreted the power to grant immunity narrowly, rejecting the notion that the court has an inherent power to order immunity. *See State v. Peirce*, 364 N.W.2d 801, 808-09 (Minn. 1985). Relying on cases from the Second and Fifth Circuits, we have held

12

that "to allow defense witness immunity would be an impermissible intrusion into prosecutorial discretion which must remain with the executive branch, and that such immunity would be vulnerable to manipulation and abuse by codefendants and others with a common interest in evading guilt." *Id.* at 809 (referencing *United States v. Thevis*, 665 F.2d 616 (5th Cir. 1982) and *United States v. Turkish*, 623 F.2d 769 (2d Cir. 1980)). Absent "egregious prosecutorial misbehavior," denying immunity to defense witnesses does not violate a defendant's constitutional rights. *Id.*

Despite McKenzie's assertion to the contrary, there was no egregious misconduct in this case. As discussed above, the State did not substantially interfere with the witnesses' decisions regarding whether to testify at the postconviction hearing.[6] Accordingly, we hold that the postconviction court properly refused McKenzie's request to grant use immunity to McKenzie's witnesses.

### III.

Finally, we consider whether the postconviction court abused its discretion in concluding that McKenzie failed to demonstrate, by a preponderance of the evidence, that he was entitled to a new trial under the *Larrison* test. We will overturn the denial of relief on a witness-recantation claim only if the postconviction court has abused its discretion. *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006). Our review of issues of fact is limited to a determination of whether the evidence is sufficient to support the postconviction

---

[6] We need not further define the scope of activity that would constitute "egregious misconduct" under *Peirce*, because under any definition, the State's actions in this case fall short of such misconduct.

13

court's findings. *Id.* Traditionally, "[c]ourts have . . . looked with disfavor on motions for a new trial founded on alleged recantations unless there are extraordinary and unusual circumstances." *State v. Hill*, 312 Minn. 514, 523, 253 N.W.2d 378, 384 (1977). And we have recognized that the postconviction court does not abuse its discretion in denying relief "[w]here the 'newly discovered' evidence is of doubtful character and the particular circumstances of a case do not lend credence to the appellant's claim." *Id.* (quoting *State v. Wofford*, 262 Minn. 112, 115, 114 N.W.2d 267, 270 (1962)).

We evaluate recantations using the three-prong *Larrison* test, which examines whether:

> (1) the court [is] reasonably well-satisfied that the testimony in question was false; (2) without that testimony the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial.

*Opsahl*, 710 N.W.2d at 782. In order to satisfy the first prong under *Larrison*, "the recantation must contain 'sufficient indicia of trustworthiness' " leading the court to be "reasonably certain that the recantation is genuine." *Martin*, 865 N.W.2d at 290 (quoting *Martin v. State*, 825 N.W.2d 734, 741 (Minn. 2013)). The showing required for a new trial is higher than that required to receive an evidentiary hearing. *Opsahl v. State*, 677 N.W.2d 414, 423 (Minn. 2004). In *Ferguson*, 645 N.W.2d at 445-46, and *Dobbins v. State*, 788 N.W.2d 719, 732-34 (Minn. 2010), we held that although evidence in the form of a third-party hearsay affidavit was sufficient to warrant an evidentiary hearing, it did not entitle the petitioner to a new trial.

14

Like the evidence in *Dobbins* and *Ferguson*, the evidence before the postconviction court—Martin Jr.'s affidavit—was a third-party hearsay affidavit. We have never held that third-party hearsay affidavits, standing alone, bear "sufficient indicia of trustworthiness" to warrant a new trial under *Larrison*. Moreover, the record contains evidence of Martin Jr.'s history of bribing and intimidating witnesses to falsify affidavits. Finally, McKenzie makes no argument that the affidavit is admissible under a hearsay exception. Based on our review of the record, we hold that the postconviction court did not abuse its discretion when it concluded that McKenzie had not presented evidence sufficient to satisfy the first prong of *Larrison*.

Affirmed.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.