CONCURRENCE
LILLEHAUG, Justice
(concurring).
Respectfully, I concur in the result, but on a different ground. Under Padilla v. Kentucky, 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), a defendant must be advised of the deportation consequence of a guilty plea when such prospect is “truly clear.” In this case, I disagree with the court’s analysis that, when Francisco Herrera Sanchez pleaded guilty in state court to third-degree criminal sexual conduct, the deportation consequence of the plea was not “truly clear.” At that time, it was clear as a bell that Sanchez would be deported, and, indeed, federal immigration authorities took him into custody the very same day that he was sentenced. Thus, Sanchez’s plea counsel had an obligation to advise him of this consequence. I concur, rather than dissent, because I cannot say that the postconviction court’s finding of fact that Sanchez was advised by counsel that he “would be deported as a result of his plea” is clearly erroneous.
I.
A noncitizen who is convicted of an “aggravated felony” is subject to removal. 8 U.S.C. § 1227(a)(2)(A)(iii) (2012) (“Any alien who is convicted of an aggravated felony at any time after admission is de-portable.”); 8 U.S.C. § 1228(c) (2012) (“An alien convicted of an aggravated felony shall be conclusively presumed to be de-portable from the United States.”). The definition of “aggravated felony” includes “sexual abuse of a minor.” 8 U.S.C. *727 § 1101a(48)(A) (2015). Discretionary relief from removal is not available to such an offender. 8 U.S.C. § 1229b(a)(3) (2012).
The term “sexual abuse of a minor” is not defined in the federal immigration statutes. As of the time of Sanchez’s sentencing, neither the Supreme Court, nor the U.S. Court of Appeals for the Eighth Circuit or the U.S. District Court for the District of Minnesota, had furnished a definition. In the absence of such authority, immigration officials look, not to other circuits, but to the Board of Immigration Appeals (“BIA”).[1] Afolayan v. INS, 219 F.3d 784, 788 (8th Cir.2000) (explaining that published BIA decisions are “binding precedent upon all the administrative immigration proceedings of the INS”); 8 C.F.R.; § 1003.1(d)(l)(2016) (“[T]he [BIA], through precedent decisions, shall provide clear and uniform guidance to ... immigration judges ... on the proper interpretation and administration of the [Immigration and Nationality] Act and its implementing regulations.”); id. § 1003.1(g)(2016) (stating that “[selected decisions designated by the [BIA] ... shall serve as precedents in all proceedings involving the same issue”). Thus, Sanchez’s plea counsel was required to look to BIA precedent to determine whether Sanchez would be pleading guilty to a crime that constituted “sexual abuse of a minor.” If so, immigration officials would be required to deport Sanchez upon his conviction, and Sanchez’s plea counsel would be required to advise him of that consequence.
Long before Sanchez entered his plea, the BIA made clear the meaning of “sexual abuse of a minor” in a published decision. According to the BIA, the term includes “the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in ... sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children.” In re Rodriguez-Rodriguez, 22 I. & N. Dec. 991, 995 (BIA 1999) (en banc).
Having identified the then-controlling definition for immigration officials in Minnesota, I turn now to the nature of the offense committed, by Sanchez. He pleaded guilty to, and was convicted of, thirdrde-gree criminal sexual assault under Minn. Stat. § 609.344, subd. 1(b) (2016), which is defined in relevant part as engaging in sexual penetration with another person who is “at least 13 but less than 16 years” old, by an actor who is “more than 24 months older.”
Plainly, using the BIA’s then-controlling definition, the offense for which Sanchez was convicted was “sexual abuse of a minor.” Essentially, Sanchez pleaded guilty to using, persuading, inducing, and enticing a child to engage in sexually explicit conduct; in this case, sexual penetration. Accordingly, immigration officials bound by the BIA’s definition were clearly required to deport Sanchez. Therefore, I disagree with the court’s analysis that the consequences of Sanchez’s plea were not “truly clear.” Under Padilla v. Kentucky, Sanchez’s guilty plea could not be intelligent unless he was advised—by counsel or by the court—of the legally obvious consequence of the plea: he would be deported. See 559 U.S. at 385-86, 130 S.Ct. 1473.
II.
The question then is whether Sanchez was, in fact, so advised. At the plea hearing, Sanchez acknowledged on the record *728 that his plea “could result” in deportation. In the written plea agreement, he acknowledged that his plea “may result in deportation.” Those words were not enough; “could” and “may” do not fully and accurately convey the virtual certainty of the deportation consequence. Therefore, we must consider what else Sanchez knew when he entered his plea, including what advice he received from his attorney.
Here, there is a stark conflict in the testimony the postconviction court received during the evidentiary hearing on Sanchez’s motion to withdraw his guilty plea. On the one hand, Sanchez testified that he understood only that he “could” be deported. On the other hand, Sanchez’s plea counsel testified that he had advised Sanchez that Sanchez was “looking at deportation” and “would be deported.” The postconviction court believed plea counsel and disbelieved Sanchez, finding as a matter of fact that: “If deportation was a certain result of Petitioner’s guilty plea, then [plea counsel] accurately advised Petitioner concerning the immigration consequences of his guilty plea.” Sanchez, the court found, chose to ignore the deportation consequence “because he simply thought he would not be deported.” Therefore, the postconviction court concluded, Sanchez’s plea was intelligently entered and his counsel did not provide ineffective assistance.
We review a postconviction court’s findings of fact to determine whether they are clearly erroneous. McKenzie v. State, 872 N.W.2d 865, 870 (Minn.2015). A finding of fact is clearly erroneous if, after reviewing the record, we “reach[ ] the firm conviction that a mistake was made.” State v. Kvam, 336 N.W.2d 525, 529 (Minn.1983). We will not disturb a district court’s factual finding if there is reasonable evidence to support the finding. State v. Evans, 756 N.W.2d 854, 870 (Minn.2008). Thus, for example, a postconviction court s finding that counsel did not fail to advise a client adequately will not be overturned if supported by “substantial evidence.” State v. Powell, 578 N.W.2d 727, 732 (Minn.1998).
Here, there was conflicting testimony about what advice was given during attorney-client conferences. Both attorney and client were cross-examined. The postcon-viction court, being in the best position to assess the testimony, credited particular testimony of the attorney. I cannot say that the postconviction court’s finding in this regard is clearly erroneous.
Therefore, because I would affirm the court of appeals on a different ground, I concur in the result.

. The court of appeals' and the majority’s reliance on the law of other circuits is a red herring. In the absence of law from the Supreme Court, the Eighth Circuit, or the District of Minnesota, immigration officials in this state properly look to the BIA for controlling law. Afolayan, 219 F.3d at 788.